THE PEOPLE, on the relation of Peleg Gallup, *vs.* ARCHI-
BALD GREEN.

A sheriff elect-
ed in Septem-
ber, 1826, to
supply a va-
cancy occa-
sioned by the
death of his
predecessor,
who took his
office on 1st
January, 1826,
holds his office
for      three
years; and an
election of an-
other person
in November,
1828, under an
impression
that the term
of the former
expired in Jan-
uary, 1829, is
void.

MOTION for leave to file an information in the nature of a quo warranto.   Archibald Green was elected sheriff of the county of Cayuga, at a special election holden on the 4th September, 1826, in pursuance of a proclamation of DE WITT CLINTON, then governor of the state, issued in consequence of the death of Stephen W. Hughes, who, at the general election in November, 1825, was chosen sheriff of Cayuga, and on the 1st of January thereafter took upon himself the duties of the office, which he continued to discharge until the 19th day of July, 1826, when he died.   At the general election in November, 1828, the relator was elected sheriff of Cayuga, and on the 1st of January last gave bail according to law, took the oath of office, and demanded the office from the relator, which he declined to surrender, claiming that the term for which he was elected had not yet expired.

*B. F. Butler,* for relator.   The constitution gives the power of passing laws on the subject of *elections* to the legislature.   The act under the new constitution regulating elections, passed 17th April, 1822, (*Statutes, 6th vol. a.* 267,) made no provision for *vacancies* happening by the death of sheriffs or clerks, which, however, was supplied by the act of 24th April, 1823, (*Statutes, 6th vol. b.* 418,) directing, in case of a

vacancy by death or otherwise, in the office of sheriff or clerk of any county, a special election to be holden to fill the vacancy, and declaring that any officers so elected should continue to hold their offices *until the next general election* for such officers. This was a legislative exposition of the constitution, almost contemporaneous with its adoption, by a legislature who must be supposed to have well understood the intentions of the framers of that instrument ; and by declaring that the persons chosen at such special elections should hold until the next general election, they evidently meant they should hold until the next *triennial* election, and no longer. The omission in the *revision* of the election law to reenact this provision, affords no evidence of a different view of the question by the legislature in 1827. On the contrary, the provisions of the eighth section of that statute, recognizing the distinction of an election to supply a vacancy, and an election for the constitutional term, supports the construction of the legislature of 1823.

The first clause of the 8th section of the 4th article of the constitution declares that sheriffs and clerks of counties, &c. shall be chosen once in *every* three years, and as often as vacancies shall happen. The first election of sheriffs was to be holden in November, 1822 ; the office to commence on the 1st January, 1823, and the *political* year is made to commence on the *first day of January.* The term of office of sheriffs first elected, therefore, expired on the 1st January, 1826, and those elected at the second general election, on 1st January, 1829. Give effect to the words *every three years,* and the question is placed beyond controversy, that the convention intended there should be a *triennial election* of those officers, and if a vacancy occurred in the mean time, that the person elected to fill such vacancy should hold only to make up the term of the former incumbent. The language used in a subsequent clause of the same article, where power is given to remove a sheriff at any time within *the three years for which he shall be elected,* does not conflict with our construction. Those words cannot be considered as fixing the duration of the office ; for that was not the subject respecting which the convention were then expressing their views, which

was the conferring a power of removal.   The duration of of-
fice had already been provided for, and was here mentioned
only incidentally.   By reference to the history of the pro-
ceedings of the convention, (*Carter & Stone's Debates of the
Convention,* 159, 160, 384, 388, 389,) it will be seen, that
the clause respecting the removal of those officers formed no
part of the original proposition as to this section, and, there-
fore, the words of that clause, which will be urged against
us, are not entitled to the consideration which probably will
be claimed for them.   Besides, it is against the cardinal rules
of construction to give effect to a subsequent clause, if, by so
doing, the main object of a statute is defeated.

All officers who are *appointed* hold their offices for a term
certain.   (*7th, 9th and 12th sections of Art.* 4, and 6th *section
of Art.* 5.)   Not so as to officers *elected*, except the governor
of the state; and the exception proves the rule, as in the case
of that officer, there can be no vacancy.   This marked dif-
ference is not accidental, nor is the distinction arbitrary.
When a vacancy occurs in an office held by appointment, it
is easily supplied; but it is not so when it occurs in an elec-
tive office, when a special election is rendered necessary,
causing trouble, inconvenience and expense.

By the construction we contend for, the harmony of the
system established by the constitution, requiring the elections
to be on the same day, is preserved.   By a contrary con-
struction, in a few years, but for the amendment of the law,
special elections would have been necessary every month in
the year.

There are arguments, *ab inconvenienti,* which, in a question
of this kind, admitting of doubt, are entitled to consideration.
If the defendant holds for three years, from what time
does his term commence ?   Is it from the last day of the
election ?  from the time of canvass of the votes ?  from the
date of the certificate of his election ?  or from the time he
gave bail and took the oath of office ?   If the construction on
the other side is correct, the defendant will not only have the
office three years, but will be entitled to hold over from Sep-
tember, 1829, until January, 1830, unless the legislature au-
thorize a special election ; and if they do, a special election

ALBANY,
Feb. 1829.

The People
v.
Green.

will be necessary for all time to come; and extending this to every county in the state, would produce great inconvenience. The right to hold over, though a correct principle when adopted from necessity, should not be created by construction; but rather the power to elect should be returned to the people, conformably to the genius of the constitution, and the principle upon which it is based, that all sovereignty resides in the people.

*A. Van Vechten*, for defendant, said that the court would decide this case without regard to legislative construction. He had heard of legislative expositions, but knew not what respect they were entitled to, when the question was, whether the legislature had not transcended the powers given them by the constitution. It is the high prerogative of this court to see that the charter which the people have given, and which has been adopted as the fundamental law of the land, is not violated, and that each branch of the government is kept within its appropriate sphere of action. In shortening the term of office, the legislature, by the act of 1823, exceeded their authority. They had the right to provide for a special election, but could not change the tenure of the office. An act of the legislature, acquiesced in for a length of time, might be entitled to some consideration; but here the objectionable provision of the act of 1823 was omitted in the act of 1827.

A sheriff, when elected, holds his office for three years. He is ineligible for *the next three years* after the termination of his office; and he may be removed at any time within *the three years* for which he is elected, on charges presented against him. (*Art.* 4, *sect.* 8.)

It is said, that being elected to supply a *vacancy*, necessarily supposes a continuance of a term. But it is not so. When the officer dies, the office ceases; it returns to the people; and, on a new election, a new term is created. The officer holds the trust as a gift from the people, for the term designated by the constitution. How can the person elected occupy the unexpired term of an office which has ceased? It is not a necessary implication that the person who is elect-

ed to supply a vacancy shall hold only during the remainder of the term of his predecessor. Such implication can arise only from the provisions of the constitution, none of which require that implication shall be resorted to. The constitution contemplates vacancies; the legislature are authorized to enact the necessary laws relative to elections; but no power is given to them to restrict the term of office.

The object of the convention in fixing the term of office of sheriffs at three years, was, by giving some degree of permanency to the station, to induce men of respectability and property to accept it; and when elected, that they might act independently of popular favor; so to remove temptations to a neglect of duty or corrupt conduct whilst holding the office, they are made ineligible for three years after the termination of their offices. The construction contended for by the relator would defeat this intention, for if but six months of the term of a predecessor was left unexpired, who would accept the office for that short period, and thereby become ineligible for three years? The practice under the former constitution, in relation to the appointment of sheriffs, fortifies the construction we contend for: by it, it was ordained that sheriffs should be *annually* appointed, yet never was it pretended, that if a vacancy happened and a new appointment was made, that the person appointed to supply the vacancy, held only to the expiration of the term of service of his predecessor. The requirement of the constitution, that sheriffs shall be chosen once in every three years, is satisfied by a construction that an election shall not be held for those officers, *oftener* than once in every three years, except in cases of vacancies.

Arguments *ab inconvenienti* are always dangerous; when practicable, it is best to abide by the plain, common sense meaning of a statute. Whatever inconveniences might have existed in cases of elections to supply vacancies, they are all obviated by the revised act of 1827.

*G. C. Bronson,* (attorney general,) in reply. The constitution is imperative, that sheriffs shall be chosen by the electors of the respective counties, once in *every* three years,

and as often as vacancies shall happen. A law, and more especially a constitution, is to be so construed as to give effect to every word, and especially to every proposition. The construction on the other side rejects the provision for elections, when vacancies happen, and renders it insensible and unmeaning.

The term *vacancy* necessarily supposes an unexpired term. By the decease of an incumbent, the term is not ended; the incumbent only is gone; and when a person is elected to supply a vacancy, he holds for the residue of the term of his predecessor. The convention had a meaning in framing this section of the constitution, for there is no similar provision respecting other officers. The commencement of the political year is fixed, and an election is contemplated every three years in reference to it. Such election has been holden; the relator has been elected, and is entitled to the office.

The latter clause of the 8th sect. of the 4th art. cannot be considered as expressive of the sense of the convention, in relation to the term of office. It solely provides for the removal of officers on charges presented; and what is said in relation to the tenure of office is wholly incidental. The words used in the last clause of the section are synonymous to time, term or period, that is, the officer may be removed on charges presented, at any time during the term for which he is elected. The provisions of this section are separate, distinct and independent, as much so as if thrown into several sections; relating to the same subject, they were incorporated into one.

No argument can be drawn from the provisions of the old constitution, or from the practice under it relative to the appointment of sheriffs. In the old constitution there was no provision, as in the new, to supply vacancies. The cases, therefore, are dissimilar, and whatever the practice may have been, it does not help the defendant. If there are serious doubts as to the construction which the constitution should receive, the acts of the legislature in reference to this subject may with propriety be looked into. They were contemporaneous expositions by the immediate representatives of the

ALBANY,
Feb. 1829.

The People
v.
Green.

people, and like the papers of the *Federalist*, in reference to the constitution of the United States, may be consulted with advantage. The act of 1823 explicitly shews the sense of the legislature, that the person elected should hold only for the unexpired term, and the act of 1827 proceeds upon the same principle.

The defendant claiming to hold an office, after the people have elected another to fill it, should shew a clear case, or the motion ought to be granted.

*By the Court*, MARCY, J. This case involves the construction of that provision in the constitution of this state which relates to the office of sheriff. The eighth section of the fourth article declares that sheriffs, &c. shall be chosen by the electors of the respective counties, *once in every three years, and as often as vacancies shall happen;* they shall hold no other office, and be ineligible for the next three years after the termination of their offices; and the governor may remove them at any time *within the three years for which they shall be elected.* These are all the provisions of the constitution having a direct bearing on the subject now before us. There is no express designation of the term for which sheriffs shall hold their offices, but it is fixed at three years by the strongest implication.

The question now under consideration does not arise on the application of these provisions to ordinary cases, but to a case somewhat varying from them, yet such as the framers of the constitution must have foreseen would very frequently happen; and it is therefore reasonable to infer, that if they intended that persons elected to fill vacancies in the office of sheriff, happening before the expiration of the term of the previous incumbent, should hold for a shorter period than the general term, they would not have left that intention to be evolved by ingenious distinctions and dubious inferences.

By the general provision, elections for sheriffs are not to be held oftener than once in every three years, except in cases of vacancy. In what part of the constitution is it declared, or from which of its provisions are we authorized to infer an exception, in the case of a person elected to an office,

vacant by the death, resignation or removal of his predeces-
sor? Why shall he not hold as long as he would have done,
if elected at the end of a full term? It is the designation of
the stated period for the election, that fixes the term of hol-
ding, and this designation is applied to every election. Ap-
ply the language of the constitution to a single county; to
that of Cayuga for instance; it is, that the sheriff of this
county shall be elected once in every three years, and as of-
ten as a vacancy shall happen. A vacancy did happen by
the death of *Hughes*, and without the latter clause of the
foregoing sentence, no election could have been held, until
three years from the previous one; but I cannot infer from
this clause, any restriction upon the term of *Green* the suc-
cessor of *Hughes*. It does not express or imply that he is to
serve out only the residue of *Hughes'* term. *Green* was
elected, as I understand the provision, to fill the vacant of-
fice, and not merely to serve out the vacant term of his pre-
decessor. I am inclined to think that a diversity of opinion
on this subject has arisen, from different applications of the
term "*vacancies*," in the section of the constitution which
we are now considering. It has been sometimes applied to
the office, as contradistinguished from the term of service,
and at others, to the term of the office. I understand it as
applicable to the office alone. When *Green* came into the
office, he took it with all the rights, powers and incidents be-
longing to it, under any circumstances; one of which was a
tenure of three years. The case of sheriffs has been assimi-
lated to that of senators, who are declared by the constitu-
tion to be chosen for four years; but those chosen to fill va-
cancies hold only for the residue of the unexpired term of
their predecessors. This limitation to the holding does not
result from the fact that they are elected to fill vacancies, but
from other parts of the constitution from which it is neces-
sarily implied. The provision classifying the senators, and
vacating the seat of one from each district in every year,
could not be carried into effect, if a senator elected to fill a
vacancy were to hold a full term of four years. But permit-
ting a sheriff to hold for three years in case he is elected to

fill a vacancy, is not like the case of a senator, incompatible with any other part of the constitution.

To support the position taken for the relator, we have been referred to the proceedings of the convention which framed the constitution, and to the acts of three legislatures, which have had this subject before them. The first proposition in the convention relative to sheriffs, was, that they should be appointed annually, be ineligible after four years, and incapacitated to hold any other office at the same time. (*N. Y. State Convention*, 160.) This, it will be recollected, was the precise tenure of the office of sheriffs under the old constitution. To this proposition an amendment was offered, that they should be chosen by the electors of their respective counties once in every three years, and as often as vacancies should happen ; should hold no other office, and be ineligible for the next three years after the termination of their offices respectively. (*N. Y. S. Con.* 384.) There was, in the convention, very considerable opposition to choosing sheriffs at a popular election, and the mover of this amendment, when he submitted it, remarked that he should be opposed to that mode of election if it was to be annual ; and that he was in favour of it, because three years were given for the duration of the office, and during the three next years the officer was rendered ineligible. Although there was not any thing in the debate on this proposition, nor in the circumstance of an addition to it, providing for a removal of a sheriff " *at any time within the three years for which he shall be elected*," clearly evincing the views of the convention on the question under consideration, yet we see that frequency of election was regarded as an objection to this new mode of choosing sheriffs, and the term of office was three years ; we shall therefore be most likely to conform to the intentions of the convention, by giving a construction to the constitution which will avoid the objection of frequent elections. We find nothing in the proceedings of the convention to authorize us to set up, by construction, an exception to the general limitation of three years.

Great deference is certainly due to a legislative exposition of a constitutional provision, and especially when it is made

almost contemporaneously with such provision, and may be supposed to result from the same views of policy and modes of reasoning which prevailed among the framers of the instrument expounded. I am not aware, however, that the relator can urge upon us a legislative construction of the section we are now considering, which has not been recalled or questioned by a subsequent legislature.

The legislature of 1822 passed the general election law, to carry into effect the provisions of the amended constitution on that subject, but gave no exposition of the section on which the present question arises. They did not provide for any special election, except for members of congress, nor for filling any vacancy in the office of sheriff, happening before the close of a term for which the late officer was chosen. The succeeding legislature supplied this deficiency, and declared that "all officers elected to fill a vacancy, should hold their respective offices until the next general election for such officers, and others are elected and qualified in their stead, except otherwise removed." (*Sess. Laws*, 1823, 419.) This law has been presented to us as a legislative construction of the constitution in favor of the relator, and I think it should be viewed in that light.

In the recent revision of the statute laws of this state, great care was taken, not only by the revisors but by the legislature, to reduce them to system, to remove their ambiguities, and make them conform to the provisions of the amended constitution. The clause in the act of 1823, which contains a view of the constitution similar to that taken by the relator, is not found in the report of the revisors, nor was it, either in form or substance, as I conceive, introduced by the legislature into the chapter regulating elections. If the construction for which the defendant contends is not corroborated by these facts, they at least destroy the force of the argument for the relator derived from the act of 1823. It was said on the argument, that though the revised statute concerning elections was not as explicit as that of 1823, yet a similar exposition of the constitution was deducible from it. The eighth section of title 1, ch. 6, provides, "That all vacancies in the office of representative in congress, senator, justice of the peace,

sheriff, &c. shall be supplied at the general election next suc-
ceeding the happening thereof ; but when the term of ser-
vice of any such officer will expire at the end of the year
during which the vacancy in his office shall occur, no person
shall be chosen to supply such vacancy, but the usual elec-
tion shall be held for a new officer, to hold during the *consti-
tutional term.*"  It has been supposed that the expression
" *constitutional term,*" in this section, means a term of service
necessarily commencing on the 1st day of January, and that
it applied to the tenure of office of each description of offi-
cers mentioned therein ; but this cannot be so, for the con-
stitutional term of a representative in congress commences
on the 4th March.    The effect of this section is only to dis-
pense with special elections, and provide for filling vacancies
happening during the year, at the general election for that
year ; and in case the term of service of any officer would
expire before the close of the year, a successor to the
last incumbent is to be chosen in the same manner and to
the same effect as if no vacancy had happened.    Although
the notion that there is a triennial term for each sheriff in the
state, commencing and expiring on the same day, and that
sheriffs chosen to supply vacancies are only to hold to the
end of the current triennial term, may derive some counte-
nance from the concluding clause in this section, yet it is
very slight, and altogether iusufficient to authorize a belief
that the legislature which revised the election laws intended
to express its concurrence in the views of that of 1823.

   The language of the clause under consideration is some-
what different from that used in designating the tenure of
the officers appointed by the governor and senate or by the
legislature, and from this an inference has been drawn in fa-
vor of a triennial term ; but I apprehend that peculiar
phraseology may be accounted for without supposing a stud-
ied variance, with a view to authorize the construction con-
tended for in support of the present application.

   We have before seen that the first proposition made to the
convention relative to sheriffs was similar to the provision in
the old constitution.   The term of service was not fixed,
otherwise than by regulating the period of appointment.  The

amendment to this proposition pursued the same phraseology, but gave the choice to the electors of the counties, and extended the period from one election to another, to three years, instead of leaving it one year, as it was under the former constitution. It also provided for an election within three years, in cases of a vacancy. If the peculiar language of this section, which is supposed to warrant the construction put upon it by the relator, may be traced, as I think it can be, to the provision in the old constitution relative to sheriffs, the received construction of that provision may help us to a correct interpretation of the clause derived from it in the new constitution.

The old constitution declared that sheriffs should be appointed annually; and it was the conceded construction of this provision that a sheriff, coming into the office while the term of his predecessor was unexpired, held not for the residue of that term, but for an entire year.

Most of the state officers are declared to be chosen for three years; and it is not pretended that a person chosen to fill a vacancy in one of them, would be limited to the unexpired term of his predecessor. Whence the difference between a sheriff, elected to supply a vacancy, and the secretary of state or attorney general, chosen under like circumstances? Though a different mode of expression is used to designate the duration of their respective offices, one is not thereby rendered less certain than the other. There are no provisions of the constitution that call for a rule of construction, in relation to the tenure of persons selected by the legislature to supply vacancies different from that which is to be applied to sheriffs and clerks chosen by the electors.

In relation to the argument derived from supposed inconveniences, I would observe that it can have no weight where there is no doubt. If this, however, was a case in which it was proper to be influenced by such considerations, those presented to us do not appear to be of a very decisive character. Nearly all of the inconveniences that were represented as likely to be burdensome to the people, and embarrassing in the discharge of the duties of this office, on the sup-

The People
v.
Green.

position of a decision against the claims of the relator, are removed by the existing statute regulating elections.

I am of opinion, upon a full view of the subject, that the defendant took the office of sheriff of Cayuga for three years, and that the election of the relator is void.

Motion denied.

In consequence of the indisposition of the CHIEF JUSTICE, and of Mr. JUS-TICE SUTHERLAND, during the latter half of this term, no decisions were made in causes argued at the last term.