The following opinions were delivered :
By the Chancellor.
The question presented for our consideration in this case, is, as to what is the true construction of that clause of the constitution which provides that sheriffs and clerks of counties, including the register and clerk of the city and county of New-York, shall be chosen by the electors of the respective counties once in every three years, and as often as vacancies shall happen. Const, art. 4, § 8. Was it the intention of the framers of the constitution to establish a series of triennial elections, which should be the same throughout all time ; or did they merely intend to declare that officers of *514 this class should be elected by the people of the counties for which they were to be chosen, and to fix the term of three years, as the period of time during which such official officers should continue in office without a re-election, when eligible to the office for a second term ?
It cannot be denied that the meaning of this section of the constitution is not very clearly expressed; and that the first clause of the section, if taken by itself, might bear the construction which is now contended for by the counsel for the plaintiff in error. It is not surprising, therefore, that men of intelligence, and even legislative bodies, should have arrived at different conclusions on this subject. Taking the whole section together, however, and examining it in reference to certain principles which we may fairly presume to have actuated the framers of the constitution in adopting its several provisions, I am satisfied it was only intended by the first clause of this section to declare the principle, that officers of this class should be elected as often as vacancies should occur, by the electors of the county in which they were to serve, and that the term of office upon every such election should be for the period of three years. *By referring to the published debates in the convention, it will be seen that such was the intention of the members of that body upon whose suggestion the three first clauses of this section were adopted, although the language used by him in the first clause of his written proposition, and which was subsequently retained, is somewhat obscure. Previous to the introduction of this provision, and while a proposition relative to the appointment of justices and other local officers was under discussion, he said his object in moving to strike out the word sheriffs from the clause then under consideration, was to provide for their being elected by the people. “ Let them hold for a given time, and then make them ineligible for the next term ; make them give ample security, and yon will have men worthy of the office.” N. Y. S. Conv. 331. And upon the introduction of his written proposition on this subject five days afterwards, he said he should be opposed to the election of sheriffs by the people if the elections were to be annual, and the sheriff to attend the polls with executions in his pocket, and deputies at his heels. “ But give him three years for the duration of his office, and make him ineligible for the next three years, so that he may not suspend the collection of debts with a view to his re-election.” Id. p. 384. Again; in answer to gentlemen who had opposed the proposition to elect sheriffs by the people, he says, “it is proposed that the sheriff shall hold his office for a given time, and then be ineligible for a time ; by which means ho cannot turn his influence while in office to the purposes of a re-election.” Id. p. 388. It was not, therefore, the particular time of election for such officers, but the limitation of the term of office to three years which he had in view.
It is supposed, however, by the counsel for the plaintiff in error, that a legislative construction has been given to this provision of the constitution, in favor of the claim set up by him, which should control our decision in the present case. Upon a question of real doubt as to the meaning of a particular clause in the constitution, a legislative construction, if deliberately given, is certainly entitled to much weight, although it is not conclusive upon the judical tribunals. The *general election law of 1822, Laws of 1822, p. 267, did not, in terms, direct an election of sheriffs and clerks at the annual election in November, to supply vacancies which might have occurred in those offices; but the provisions of the first and third sections of that act were sufficiently extensive to include such cases, and the constitution having directed those officers to be elected as often as vacancies happened, I have no doubt it was the intention of the framers of that law that such vacancies should *515 be thus filled. As nothing is said, however, as to the duration of the offices of persons thus elected to supply vacancies, this act cannot be considered as a legislative construction of the provision of the constitution now under consideration, either one way or the other. The act of April, 1823, amending the general election law of the previous year, provided for the holding of special elections, under an executive proclamation, to supply vacancies in the offices of sheriff, clerk, or register ; and it directed that the officers so elected should continue to hold their offices until the next general election for such offices. I am inclined to think the person who prepared that act supposed a triennial election had been established by the constitution at which every officer of this class must be elected, without reference to the time of the election of his immediate predecessor in office ; but it will be seen how little weight this act is entitled to, as a legislative construction of the constitution, when we advert to the circumstances under which it passed. By referring to the legislative journals of 1823, it will be found that the bill was introduced into the assembly near the close of the session ; was taken up for the first time and passed in committee of the whole, in the afternoon of the last day before the adjournment of the legislature and ordered to a third reading, and was passed and sent to the senate the next morning, where it was immediately passed, without amendment. It is hardly probable, therefore, that there was even a suggestion by any member of either house, that there was any thing contained in this act which involved a construction of any provision of the constitution. The revised statutes, however, were examined and passed with great care and deliberation ; especially, those parts thereof which involved legislative constructions of the *constitution ; and if the counsel for the plaintiff in error is correct in his supposition, that the legislature of 1827 intended to give a construction to the section now under consideration, against the right of the officer elected to fill a vacancy to hold the office for the term of three years, I should think it my duty to follow that construction, unless satisfied that such legislative construction was clearly wrong. I have, therefore, taken great pains t.o examine the several provisions of the revised statutes, as finally adopted by the legislature, in connection with the recommendations of the revisors on this subject, and to trace the progress of legislation thereon, so far as it could be done from the imperfect journals which were then kept; and the conclusion at which I have arrived from that examination is, that the legislature intended to reject the construction contended for by the plaintiff in error.
There is no doubt of the fact that the revisors intended to give the same construction to the section of the constitution relative to the election of sheriffs, clerks, and register, as had been given to it in the act of April, 1823; and by referring to their report of the fifth chapter of the first part of the revised statutes, it will be found that they also gave the same construction to the sixth section of the fourth article of the constitution, relative to he appointment and tenure of office of the comptroller, secretary of state, attorney general, &c. See chap. 5, as reprinted by the Revisors, p. 17, § 7. In this last case it must be conceded that the construction of the revisors was clearly wrong, as the sixth section of this article of the constitution declares in express terms, that those officers shall hold their offices for three years, unless sooner removed by concurrent resolution of the senate and assembly. The legislature, therefore, struck out so much of the section reported by the revisors as was intended to shorten the term of office of that class of office of that class of officers, when they were appointed to supply existing vacancies, and left the provision as it stands in the revised statutes. 1 R. S. 105, § 7. By referring to the 29th page of the same report, it will be found that in the fifty-second section, *517 which related to the election of sheriffs, clerks, and coroners in new counties, corresponding with the fiftieth section as it stands in the revised statutes, 1 R. S. 113, the *revisors added a declaratory clause that the officers first elected in such counties should only hold their offices until the first day of January after the next general election, at which such officers were to be chosen throughout the state. The legislature, however, struck out that clause, and left such officers to hold for the constitutional term of three years. But what is conclusive evidence to my mind that the legislature of 1827 differed with the revisors in their construction of the section of the constitution now under consideration, is the fact that the forty-eighth -and forty-ninth sections of the fourth title of the fifth chapter, as reported by the revisors, Rev. Rep. p. 29, were rejected, after a full discussion of the question, and after a committee of conference had been appointed upon the subject, of which one of the revisors, then a member of the senate, was the chairman. The forty-seventh section, as reported by the revisors, was the same as in the revised statutes, 1 Revised Statutes, 112, section 47, and was but a re-enactment of the constitutional provision that sheriffs and clerks of counties, and the register and clerk of the city and county of New-York, were to be chosen by the electors of the respective counties once in every three years, and as often as vacancies occurred. To which the revisors added the other two sections, which were in the following words : “ § 48. They shall be so elected at each triennial general election from and after the general election held in the month of November, in the year one thousand eight hundred and twenty two.” “ § 49. Unless when chosen to supply vacancies or upon the erection of a new county as hereinafter provided, they shall hold their offices for three years.” To the first of these sections a note was appended that the provision was new, but that it resulted from the constitution and the first election held under it; and the present forty-eighth section was reported by the revisors as the fiftieth. It appears by the journals that this chapter was first passed in the assembly and sent to the senate for concurrence ; that when it was so passed the forty-eighth and forty-ninth sections, as reported by the re-visors, were left out; and that various other alterations in this chapter were made, which probably had been recommended by the joint committee to which it had been originally referred. But when it came *into the senate, perhaps through the influence of one of the revisors, who as I have before remarked was a member of that body, and who appears by the subsequent proceeding to have adhered to his construction of the constitution with great pertinacity, succeeded in getting those two new sections again inserted after the forty-seventh ; and the fifth chapter, containing this and various other amendments, was passed and sent to the assembly. That house concurred in some of the amendments of the senate, but disagreed to that amendment which proposed to add these two sections to the chapter as passed by the assembly. The senate having afterwards adhered to a part of their amendments, including that which proposed to add these two new sections, the committee of conference was appointed, of which, as I have before observed, one of the revisors was chairman. The final result of this conference was, that the assembly agreed to the amendments as recommended by the committee, on condition that the senate should recede from their amendment by which they proposed to add these two sections after the forty-seventh section of title four; and to this the senate subsequently agreed. Tt is also worthy of observation, that the gentlemen who introduced the provision, as to the election of sheriffs and clerks, into the convention, was likewise a distinguished member of the assembly in 1827, when the discussion relative to the construction of his own language, as *519 used in this section of the constitution, took place ; and it may therefore be fairly presumed that one branch of the legislature, at least, acted with a full knowledge as to what was his understanding of the language used by him in that section of the constitution.
It was supposed by the plaintiff’s counsel, on the argument, that the last clause of the eighth section of the second title of chapter six of the revised statutes was intended to give a construction to the clause of the constitution which we are now considering; but the expression “ the usual election shall be held for a new officer to hold during the constitutional term,” affords us no light upon this question. Whether the legislature understood the constitutional term of a sheriff or clerk to be until the next triennial election, as the revisors supposed, or for the term of three years from his last election, although *such election might have been for the purpose of filling a vacancy, is still to be settled. That section was introduced by the joint committee of the two houses, on chapter six, as reported by the revisors, in the place of several special provisions relative to the election of various officers to supply vacancies. And the expression “ to hold during the constitutional term,” was properly used, to save the necessity of a particular specification of the different constitutional terms of office of the various officers embraced in that section. It will also be found, from an examination of the journals, that this chapter had finally passed both branches of the legislature several days before the discussion commenced as to the construction of 'the clause of the constitution relative to the election of sheriffs and clerks ; which discussion, as we have before seen, arose upon chapter five, which was subsequently passed. See Senate Journal, 42, 43, 55, 58, 59, 62, 64, 66; Assembly Journal, 30, 31, 36, 38, 40, 41, 46, 47, 49, 54.
Finding, from this examination, that we are not embarrassed by any legislative construction against the right claimed by Mr. Bunn, the relator, and that the probable intention of the framers of the constitution was to limit the term of office of each incumbent to three years from the time of his election, whether he was elected to fill a vacancy arising from the expiration of the term of office of his predecessor, or a casual vacancy happening by death, resignation or removal, I will briefly consider whether any practical evils are likely to arise from the construction which has been given by the supreme court. It is said tint if this construction is maintained, an officer may hold his office for more than three years. When a sheriff or clerk dies during the first or second year of his term, his successor, who is to be chosen at the general election in November of that year, may, under the exception contained in the statute, 1 R. S. 116, § 3, enter upon the duties of the office a few days previous to the first of January ; and as his successor, under the provisions of the same section of the statute, cannot enter upon his official duties until the first of January, subsequent to the election, it follows of course that the person elected to supply the first vacancy, will be permitted to hold the office a month or six weeks longer than the Constitutional period. It must be recollected, however, that the object of the constitution is to define and establish the general principles of the government, and to declare the rights and privileges of the people, and the general powers, duties and liabilities of their officers and agents, leaving the minor details of the system to be regulated by the legislature. When the constitution, therefore, secures to an officer his right to an office for a certain term, or directs a re-appointment after a certain number of years, that does not necessarily deprive the legislature of the power to provide for his holding over after the expiration of the constitutional term until the appointing power can have a convenient opportunity to exercise the right *521 to appoint a successor, and until such successor is duly qualified to discharge the duties of the office. It is no objection to the construction adopted by the supreme court, that under their decision the county officers will not all be elected in the same year. Indeed, so far as the interest of the public is concerned, I think it is desirable that a part of these officers should be chosen at each annual election, rather than that all should be elected at the same time, as it will be more likely to call out the great body of the electors at each general election, and may also prevent improper combinations between the candidates for office and their friends. I presume it is upon this principle the constitution has required that one of the four justices to which every town is entitled shall be elected in each year, although the constitutional term of office is four years. The beauty and harmony of the whole system is also as well preserved if a sheriff is elected at the general election in one year, and the county clerk at the next, and a register or a coroner at the third election, as if all were elected triennially and at the same time.
I am therefore of opinion that the construction given by the supreme court to the constitution is correct; that the second election of Mr. Coutant, in 1831, when there was no vacancy in the office to be supplied, was unauthorized and void ; and that the judgment in this case should be affirmed.
*By Senator Maison. The constitutional provisions is, that “ sheriffs and clerks of counties, including the register and clerk of the city and county of New-York, shall he chosen by the electors of the respective counties once in every three years, and as often as vacancies shall happen.” Const. Art. 4, § 8. The duration of the office is no otherwise given than by the inability to elect oftener than once in three years, except on the occurrence of a vacancy, and in this the provision differs from other parts of the constitution. Thus the executive “ shall hold his office for two years.” And the lieutenant governor shall hold his office “for the same term.” Const. Art. 3, § 1. Every person appointed a justice of the peace “ shall hold his office for four years.” Art. 4, § 7. Clerks of courts and district attorneys “ shall hold their offices for three years.” Art. 4, § 9. Masters and examiners in chancery “hold their offices for three years.” Art. 4, § 11. As there is no term actually expressed in relation to the offices of sheriffs and clerks of counties, and of register and clerk of the city and county of New-York, it seems to follow, that the vacancy in those offices applies to the office, and not to the term. If the office is vacant, and there is no term, it is not easy to say by what process or train of reasoning the person elected on the vacancy is to be confined to the time which remained to the former incumbent. He is in by election, and the constitution declares that the register shall be chosen once in three years, unless a vacancy happens. That this is what was intended by the framers of the constitution, judging from the instrument itself, would appear from the further provision in the 8th section of the fourth article of the constitution before referred to, that sheriffs are declared “ ineligible for the next three years after the termination of their offices.” This provision is intended to secure the county from the personal influence of the incumbent in a re-election, and to bring him to close up his official acts to the satisfaction of the community. But all this caution would be misplaced, if the office had continued but a year, as it might, was the election merely to fill out the space left by the former incumbent.
Again; the section and article of the constitution last referred to also provides, that the governor “may remove any such sheriff, *clerk or register, at any time within the three years for which he shall be elected.” Any such sheriff, clerk or register, is any sheriff elected, or register *522 chosen, according to the constitution, once in three years, and as often as vacancies shall happen ; and if they may be removed within the three years, it would seem to follow, that they were, by their election, to hold for the three years. This provision is a wholesome one, designed for good purposes, and must have been intended to apply to every holder of the office, who should so conduct as to make his removal proper; and yetan officer elected on a vacancy, and holding for a term short of the three years would not come under it. The office might be held in this way for two years, if the vacancy happened in the first year, without any check or control. This certainly could not have been intended.
These different provisions of the constitution as to sheriffs and clerks of counties, and register and clerk of the city and county of New-York, are all found in the same section, and are therefore parts of one enactment. In giving a construction to the constitution, they must be taken together, and if they are, little doubt can exist as to the intent of the framers of that instrument. Let it be understood that the person coming in on a vacancy, as well as he who was elected at the regular period, holds for three years, and then every clause and provision has its full force and effect. It is urged that the legislature, at an early day, passed on this section of the constitution, giving a different version of it. It is true that the acts of a legislature are to be passed upon with great caution, and ought not to be departed from without much consideration, and this is in a special manner true when this court is called upon to pronounce on the constitutionality of a law, which it passed upon and adopted in a different capacity. But it is equally true that if an error has been committed, and an unconstitutional law has been put on the statute book, we are bound to say so, being satisfied of the fact. In this case, however, taking all the legislative acts together, they will strongly fortify the construction which is now adopted. The acts of 1823 and 1827 certainly adopted the construction contended for by the appellant ; but then come the revised statutes, which give countenance to a different construction ; *and on this law and the constitution, the supreme court, in the case of The People v. Green, 2 Wendell, 266, came to the conclusion, which appears to be the proper and just one. I am therefore of opinion that the judgment of the supreme court should be affirmed.
On the question being put, Shall this judgment he reversed ? all the members of the court, with but two dissentients, (nineteen members being present,) voted in the negative. Whereupon the judgment of the supreme court was affirmed.