## THE STATE VS. SORRELLS.

The usage of the government, continued from the adoption of the constitution, is entitled to regard in the determination of doubtful constitutional questions.

The enactments of the Legislature are to be upheld by the courts in the absence of any clear and manifest repugnance to the constitution; and there is no such repugnance in the law providing for an election to fill, for the unexpired term, a vacancy in the office of Circuit Judge.

Under the constitution, as amended, Circuit Judges are elected for a term of four years; and, upon the happening of a vacancy, the election is for the unexpired portion of the term, and not for a full term of four years.

## *Writ of Quo Warranto.*

S. W. WILLIAMS, Attorney General. The only question to be determined in this case, is, whether the resignation of Josiah

Gould, in 1851, created a vacancy in the office of Circuit Judge of the 2d Judicial Circuit, or a vacancy in his term of that office.

Authorities to show that it created a vacancy in the office: *Sec.* 7, *art.* 6 *Const.; The State vs. Scott,* 4 *Eng.* 176; *Story's Com. on Const., secs.* 181, 182, 183 *and* 210, 212; 2 *Bl. Com.* 116; *Acts of* 1848, *page* 9; *Const., p.* 52; *Hughes vs. Buckingham,* 5 *Sm. & Marsh.* 632; *Johnson vs. Wilson et al., N. Hamp. R.* 202; *Am. Dig.* 398; *Hill vs. The State,* 1 *Ala.* 561; *Fletcher vs. Peck,* 6 *Cranch; Dartmouth College vs. Woodward,* 4 *Wheat.; The People vs. Yerby,* 6 *Cowen* 651.

GALLAGHER, for defendant. Under our form of government, no officer or incumbent of any office, has a property therein. *State vs. Floyd,* 4 *Eng.* 302; *State vs. Scott, ib.* 300. The commission, in itself, gave no right — the same being derived solely from the election. *Hill vs. State of Alabama,* 1 *Ala. R.* 561.

There can be no such thing as an officer *de jure,* an officer *de facto* existing at the same time as incumbents of an office. *Beardman vs. Holliday,* 10 *Paige Ch. R.* 223; *Smith vs. Halfacre,* 6 *How. Rep. (Miss.)* 588.

The main and sole question upon which the case depends, is simply this: can the people elect a judge of a Circuit Court, the office being vacant by the death or resignation of the previous incumbent, whose term of office has not expired — can there be such a thing as an "unexpired term?" That there can be, see *Smith vs. Halfacre,* 6 *How. (Miss.) Rep.* 580.

The distinction we assume, is, that where the appointing power is in an individual, and the appointee dies, then there is no vacancy in the term, but there is one in the office: but in cases where the appointment is in the Legislature or people, *ex necessitate rei,* upon the death or resignation of the incumbent, there is a vacancy in the term, and there remains a vacancy in an unexpired term of office.

84BB

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

Upon the order of the Attorney General, the clerk of this court issued a writ of *quo warranto* against Thedoric F. Sorrells, requiring him to show by what warrant he exercises the office of Judge of the 2d Judicial Circuit, of this State.

The plea of Sorrells, in response to the writ, alleges, that on the first Monday of February, A. D. 1849, an election was held in the several counties composing said circuit, for the election of a judge thereof, under the provisions of the *act of* 29*th December*, 1848, entitled an "*act to divide the State into Judicial Circuits, to provide for the election of Judges*," &c., at which election, Josiah Gould was duly elected, and afterwards, on the 26th day of February 1849, commissioned by the Governor, judge of said 2d circuit, for and during the term of four years from the date of his commission, and until his successor should be elected and qualified, according to law. That Gould qualified, and acted as such judge, until the 29th day of March, 1851, when he sent his resignation to the Governer, to take effect on the first Monday of August following. That thereupon the Governor issued writs of election to the sheriffs of the several counties composing said circuit, commanding them to hold a special election on the 1st Monday of August, 1851, for the purpose of electing a judge for the unexpired term of the said Josiah Gould; at which election John C. Murray was duly elected, and afterwards, on the 18th day of August, 1851, commissioned by the Governor, judge of said circuit to fill the vacancy occasioned by the resig nation of said Gould, and for and during the remainder of his term, according to law. That Murray qualified, and entered upon the duties of said office, and was entitled to hold the same, until the 26th day of February, 1853, when Gould's term expired, and until his successor was elected and qualified.

That, on the first Monday of August, 1854, a general election (being the first general election after the expiration of Gould's term, and Murray's commission) was held in the several counties

composing said circuit, for the election of a judge thereof, pursuant to the act of the 29th December, 1848, above referred to, and "*An act to provide for an election of one Representative to Congress, &c., and to change the time of holding other elections*," approved 11th *December*, 1851: at which election, the defendant, Sorrells, was duly elected, and afterwards, on the 22d day of August, 1854, commissioned by the Governor, judge of said 2d circuit for the term prescribed by the constitution. That shortly after the issuance of his commission, he qualified, and entered upon the discharge of the duties of said office; and by virtue of the premises, claims the right to hold and exercise the same, &c.

The Attorney General demurred to the plea, and the defendant joined in the demurrer.

If Murray was entitled to hold the office, under the constitution, for four years from the date of his commission, and not merely for the remainder of Gould's term, the election and commission of the defendant, were irregular, and his plea is insufficient.

When the constitution came from the hands of its framers, it contained various provisions in reference to the office of circuit judge, which it may be well first to cosnider; and then to determine how far these provisions have been modified by subsequent amendments.

*Original provisions.*—1. "The judicial power of this State shall be vested in one Supreme Court, in *Circuit Courts*, in County Courts, &c. *Art. VI., sec.* 1.

2. The State shall be divided into convenient *circuits*, each to consist of not less than five nor more than seven counties contiguous to each other, for each of which a judge shall be elected, &c. *Ib., sec.* 4.

3. The General Assembly shall, by joint vote of both houses, elect the judges of the Supreme and *Circuit Courts. Ibid. sec.* 7.

4. The *judges* of the *Circuit Court*, shall be at least twenty-

five years of age, and shall be elected for the term of four years from the *date* of their *commissions*. *Ibid.*

5. *Vacancies* that may happen in offices, the election to which is vested in the General Assembly, shall be filled by the Governor during the recess of the General Assembly, by granting commissions, which shall expire at the end of the *next session*. *Art. V., sec.* 15.

6. The General Assembly shall meet every *two years*, on the first Monday of November, at the seat of Government, until altered by law. *Art. IV., sec.* 7.

7. The Governor may, by proclamation, on extraordinary occasions, convene the General Assembly, &c. *Art. V., sec.* 8.

8. The 8th section of the "SCHEDULE" provides for the holding of the first session of the General Assembly, under the constitution, on the 2d Monday of September, 1836."

The constitution was adopted, in convention, on the 30th January, 1836, and the State was admitted into the Union, by act of Congress, approved 16th of June, 1836.

At the first session of the General Assembly held under the constitution, the State was divided into six Judicial Circuits: *Acts of* 1836, *p.* 138, 181; and a judge elected for each circuit, for the term prescribed by the constitution. *House Journal,* 1836, *p.* 133, 134, 205.

The following persons were elected :

    1st CIRCUIT—J. C. P. Tolleson.

    2d.    "    —De La F. Roysdon.

    3d.    "    —Lewis B. Tully.

    4th.    "    —J. M. Hoge.

    5th.    "    —Charles Caldwell.

    6th.    "    —Allen M. Oakley.

The Governor, by proclamation, convened the General Assembly on the *first Monday of November*, 1837. In his message, he informed the two Houses, that *Oakley*, who had been elected judge of the 6th circuit, at the previous session, "*refused to act*," and that on the — day of February, 1837, under *sec.* 15, *art.* 6,

of the constitution, he had "commissioned Levin I. Handy to fill the *vacancy* occasioned by the *refusal referred to*." Also, that the judge of the second circuit resigned his office on the 23d of October, 1837, and that no commission had been granted to fill the vacancy, in consequence of the near approach of the called session of the General Assembly. *House Journal*, 1837, *p.* 178, 179. Acting on this information, it appears that the two houses proceeded, on the 13th of November, to make an election, and Euclid L. Johnson was elected judge of the second, and Levin I. Handy, judge of the sixth circuit, who were declared, the *House Journal* says, "*duly elected for the term and period prescribed by the constitution of the State, and until their succes-sors are duly elected and qualified.*" *House Journal*, 1837, *p.* 224, 225. The *Senate Journal* says, "for and during the *time prescribed by law*," page 23.

At the same session, on the 13th February, 1838, the two houses proceeded to an election of judge of the *sixth* circuit, to fill the vacancy occasioned by the resignation of Levin I. Handy, and Wm. Conway B. was declared duly elected "*for the term and period prscribed by the laws of this State.*" *House Journal*, 1837, *p.* 427.

At the regular session in 1838, the *seventh* circuit was created; *acts of* 1838, *p.* 4: and R. C. S. Brown elected judge. *House Journal*, 1838, *p.* 318.

At the session of November, 1840, Wm. K. Sebastian was elected judge of the *first* circuit; Isaac Baker, of the *second;* Thomas Johnson of the *third;* Joseph Hoge of the *fourth;* John J. Clendenin of the *fifth;* and were severally declared "*elected for the term prescribed by the constitution and laws of the State.*" *House Journal*, 1840, *p.* 295, 299. It does not appear that E. L. Johnson had resigned the office of judge of the 2d circuit, but it would seem that it was considered that the time for which he had been elected at the called session, had expired. Moreover, at the session of 1840, Conway B. was re-elected judge of the *sixth*

circuit. *House Journal*, 1840, *p.* 459, and commissioned on the 19th of December, 1840, the day of his election.

On the 1st March, 1842, Sebastian resigned the office of judge of the *first* circuit, and Tolleson was appointed by the Governor to fill the vacancy. At the regular session of the General Assembly, in November, 1842, John T. Jones was elected judge of the 1st circuit *"for the time prescribed by law."*

During the same session, Wm. Conway B. resigned the office of judge of the 6*th circuit*—*House Journal*, 1842, *p.* 78; and John Field was elected to the office, *"for the time prescribed by law."* *Same Journal, p.* 109. R. C. S. Brown was also re-elected judge of the 7*th circuit. Ib., p.* 110.

At the session of November, 1844, Wm. H. Sutton was elected judge of the *second circuit;* Wm Conway B. of the *third;* Seborn G. Sneed of the *fourth;* John J. Clendenin of the *fifth,* *"for the term prescribed by law."* *House Journal*, 1844, *p.* 40, 42; and John Field having resigned the office of judge of the *sixth circuit* (*Appendix to House journal, p.* 57) George Conway, who had been appointed by the Governor to fill the vacancy, was elected judge of that circuit *"for the term prescribed by law."* *House Journal*, 1844, *p.* 42.

The two houses refused to go into an election for judge of the *first circuit*, holding that John T. Jones was elected at the session of 1842, for the full term of four years, and not merely to fill out the unexpired term of Sebastian. *House Journal*, 1844, *p.* 32, 36. *Senate Journal, p.* 28–'30. This decision will be noticed hereafter.

At the session of November, 1846, John T. Jones was re-elected judge of the *first circuit;* Wm. H. Field was elected judge of the *fifth* (Clendenin having resigned and the Governor having appointed Field in his place, September 1st, 1846); Wm. W. Floyd was elected judge of the *seventh* circuit. *House Journal*, 1846, *p.* 154. The *eighth* circuit was created at the same session, and C. C. Scott elected judge thereof. *House Journal, p.* 155, and Wm. C. Scott was elected judge of the *third* circuit. *Ib., p.*

214 — all of whom were elected for the "*term prescribed by law.*"

By an amendment, proposed to the constitution at the session of 1846, and ratified at the session of 1848, the General Assembly was deprived of the power of electing circuit judges, and the elections transferred to the people.

Thus we have endeavord to trace the election of judges, by the General Assembly, from the adoption of the constitution, down to the session of 1848, for the purpose of ascertaining what the usage of the government has been: because, in the determination of doubtful constitutional questions, such usage is entitled to regard, when it tends to confirm or overturn a particular hypothesis.

From this investigation, it would seem that down to the session of 1844, the usage was not altogether uniform.

Thus, for the *second* circuit, Roysdon was elected, at the first session, on the 20th October, 1836; on the 23d of October, 1837, he resigned; on the 13th of November, of the same year, *E. L. Johnson* was elected in his place, at the called session; and at the session of 1840, Baker was elected for a new term. This was all regular, if Johnson was elected to fill out the remainder of Roysdon's term, but if Johnson was elected for a new and full term of four years, his term did not expire until November, 1841, and Baker was commissioned a year too soon (23d Nov., 1840.)

For the *sixth* circuit, Oakley was elected 20th October, 1836; and declined to accept the office. The Governor, supposing this to be such a vacancy as he had the power to fill, commissioned Handy, in February, 1837; who was elected at the called sesion in the following November, but resigning, during the session, Conway B. was elected in his place, on the 13th of February, 1838. On the 19th of December, during the session of 1840, Conway B. was again elected and commissioned. Regarding his election in February, 1838, as being for the remainder of Oakley's original term, which expired 20th October, 1840. Conway B.'s second election and commission were regular. But if he was elected

in February, 1838, for a new and full term of four years, it did not expire until February, 1842; and though the General Assembly, during the session of November, 1840, had perhaps the power to elect him for a new term, over a year in advance of the expiration of his first term, in order that a vacancy might not occur in the recess of that body, yet it was not regular to commission him again until the expiration of his first term, as, under the provision of the constitution, his second term would commence from the date of his commission.    But the fact that the Governor commissioned him on the 19th December, 1840, at the time of his election, is an argument to prove that it was then understood, that his first commission was not for a new and full term, but for the remainder of Oakley's term.

Sebastian was elected judge of the *first* circuit, at the November session, 1840, resigned in March, 1842, the Governor filled the vacancy by commissioning Tolleson; at the session of November, 1842, Jones was elected, and at the November session, 1844, the question was made before the General Assembly whether Jones had been elected for a full term of four years, or for the remainder of Sebastian's term.    Each house directed its committee on the judiciary to look into, and report upon the subject.

The question was investigated by but two of the members of the committee of the Senate, (Mr. Trimble and Mr. Yell) and, as they say, in their report, only for the *"short period of one night;"* but they reported it to be their opinion, that "the constitution authorized an election for circuit judge for the period of four years only; and that the Legislature could not elect for a longer or a shorter period: and that, therefore, Jones was elected for a full term.    They refer to the case of *Smith vs. Halfacre*, 6 *Howard's Miss. Rep.* 582, but thought that case not applicable to the one before them, because in Mississippi the judges were elected by the people, and the provision there for periodical general elections, had some controlling influence in the decision of that case. Their report was adopted by the Senate; but, by what vote, does not appear.    *Senate Journal,* 1844, *p.* 28.

The committee of the House was divided. A majority repor ted that Jones was elected for four years, and that there was no vacancy. The minority reported that he was elected but for the remainder of Sebastian's term, which had expired. The house adopted the report of the majority of the committee on a division of 41 to 33. *House Journal*, 1844, *p.* 32, 36.

The opinion of the Attorney General (Mr. WATKINS, recently the Chief Justice of this court) was taken, and accompanied the minority report. He says: "In regard to all officers to be elected by the people, I conceive the intention [of the constitution] to be manifest, that they hold from one general election to another, and all appointments and elections to fill vacancies, can only extend to the next general election, in order to preserve the simplicity and purity of the elective franchise. The decision of the case of *Smith vs. Halfacre*, 6 *How. Rep.* 582, turns upon this reasoning."

After citing the cases of *The People vs. Green*, 2 *Wend.* 266; *The People vs. Coutant*, 11 *Wend.* 132, and the same case affirmed 11 *Wend.* 511, and remarking upon them as standing somewhat opposed to *Smith vs. Halfacre*, he says: "I therefore incline to the opinion that when Judge Jones was elected for the term prescribed by the constitution, he was elected for four years from the date of his commission; at the same time I feel it my duty to say, that this question is not free from doubt in my mind. I can suppose the case of judges elected at irregular or called sessions of the General Assembly; according to the view I have taken, their commissions would expire at the like irregular periods, and those offices would necessarily remain vacant to the great prejudice of the people, until the next session of the General Assembly. The whole subject is an open one in this State, and the question remains to be decided by the Supreme Court."

He concludes his opinion, by advising the General Assembly to make an election, in order that the question might be settled upon *quo warranto*; but no election was made.

That the constitution fixes the term of the office of circuit judges

85BB

at four years from the date of their commissions, does not admit of question; but whether its framers intended every judge elected by the General Assembly to hold his office for four years, from the date of his commission, irrespective of the term of his predecessor; or intended that the General Assembly should elect the judges regularly every four years, and if a vacancy occurred in the mean time, the person elected to fill such vacancy should hold only to make up the term of the former incumbent, is a question of some doubt; and it is not necessary for us to express a decided opinion on this point, as the case before us arises under the constitution as amended.

The amendments to the constitution, bearing upon this subject, are as follows:

1. "Judges of the Supreme and *Circuit Courts*, Clerks of the Supreme and Circuit Courts, Attorneys for the State, Sheriffs, Coroners, County Treasurers, Justices of the Peace, Constables, and all other officers, whose term is fixed by the constitution, to a specific number of years, shall hold their respective offices for the term now prescribed, and until their successors are elected and qualified. *Ratified November 17th,* 1846.

2. The qualified voters of each judicial circuit, in the State of Arkansas, shall elect their circuit judge.

3. That the General Assembly of the State of Arkansas shall not be restricted, as to the number of counties that shall compose a judicial circuit in this State." *Ratified November 25th,* 1848.

By additional amendments, ratified at the same time, the election of Prosecuting Attorneys, County and Probate Judges, was also transferred to the people.

It may be observed that while the power of electing the circuit judges was in the General Assembly, the Governor was authorized to fill vacancies occurring in recess, but the amendment of November 25th, 1848, transferring the election of judges to the people, made no provision for filling vacancies happening between times that might be fixed for general elections, by death, resignation or removal; and, therefore, the mode of filling such vacan-

cies was left open for legislative regulation. Though the election of judges for the regular constitutional term of four years, must be made by the people, yet it can hardly be questioned but that in the absence of any constitutional prohibition or restriction upon the General Assembly, they have the power to control the manner of filling vacancies occurring in the regular terms.

The General Assembly of November, 1848, after adopting the amendments to the constitution, transferring the election of the judges, &c., to the people, passed an act providing for such elections, &c. *Acts of* 1848, *p.* 50. This act, passed by the same body of men who ratified these amendments to the constitution, is entitled to some respect, as an exposition of their understanding of the intention and effect of such amendments. Opinion of Chancellor WALWORTH in *Coutant vs. The People*, 11 *Wend.* 512; and MARCY, J., in *The People vs. Green*, 2 *Wend.* 266.

The first section of this act, divides the State into six judicial circuits.

The 2d section provides that an election shall be held at the several election precincts of this State, on the 1st Monday of February, 1849, and every two years thereafter, for the election of a County and Probate Judge for each county, and a Prosecuting Attorney for each judicial circuit; who shall hold their respective offices for the term of two years from the date of their commissions, and until their successors are elected and qualified.

The 3d section provides, that there shall be elected, at the election to be holden as aforesaid, on the first Monday of February, 1849, and *every four years* thereafter, a judge of the circuit court for each of the judicial circuits, who shall hold their respective offices for the *term of four years* from the date of their respective commissions, and until their successors are elected and qualified.

The 5th, 6th and 7th sections, provide for the mode of conducting the elections, making the returns, &c.

*Section* 8 is in these words: "If any *vacancy* shall occur in either of the offices of Judge of the County and Probate Court,

of *Judge* of the *Circuit Court*, or Prosecuting Attorney, by death, resignation, removal from the county in the case of a Judge of the County and Probate Court, removal from the circuit in case of a Judge of the Circuit Court or Prosecuting Attorney; or otherwise, it shall be the duty of the Governor to issue a writ of election to fill such vacancy, directed to the sheriff or sheriffs of the proper county or counties; which election shall be holden on a day named in said writ of election; and the person so elected to fill a *vacancy*, shall hold his office for the *unexpired term of his predecessor*, and until his successor is elected and qualified."

The wisdom of this provision for filling *vacancies*, is so manifest, that it should be upheld by the courts, in the absence of clear·and undoubted repugnance to some clause of the constitution. If no regard were paid to regular terms in the election of judges—if every judge was elected for four years from the date of his commission, regardless of the term of his predecessor, and of the time of his election, no system of periodical general elections could be preserved, but numerous special elections might occur, greatly to the inconvenience of the voters, and at unneces s ry public expense. But it was argued by the Attorney General, that this inconvenience might be avoided, by a provision of law, permitting a judge, elected at a special election, to hold the office for four years, and then to hold over, under the amendment to the constitution of November 17th, 1846, above copied, until the next general election succeeding the expiration of his term. True, this might be done, but it would be a departure from the spirit and intention of this amendment, which was designed not to extend the term of office fixed by the constitution, but to prevent temporary vacancies, between the going out of one judge, and the coming in of another.

At the time the election of judges was transferred to the people, the judges of the *first*, *third*, *fifth* and *seventh* circuits held unexpired terms. The terms of those of the *second* and *sixth* had expired; the *fourth* had expired, and was vacant by removal; and the judge of the *eighth* circuit, having been appointed one

of the judges of this court, his successor held a temporary commission from the Governor.

The General Assembly seem to have been under the impression that the adoption of the amendment to the constitution, providing a new mode for the election of the judges, worked a vacancy in the offices of all the incumbents; and hence, they provided for a general election on the first Monday of February, 1849.

But there being doubts about the effect of the change of the mode of election upon the unexpired terms of the incumbent judges, the General Assembly, by the 10*th section of the act of December 29th*, 1848, directed the Attorney General to issue a writ of *quo warranto* against one of the incumbents, to test the question; and provided that if the Supreme Court decided that he was entitled to hold out his term, then the judges of the *first, third, fifth* and *seventh* circuits, who were elected at the previous session of the Legislature, should respectively be judges of the *first, third, fifth* and *fourth* circuits, as established by that act, until the first Monday of February, 1851, and until their successors were elected and qualified; "and if a *vacancy* occur in the office of judge of either of the circuits last aforesaid, such vacancy shall be filled in the manner and *for the time* prescribed in the *eighth* section of this act; and at the general election, to be holden on the first Monday in February, 1851, and every *four years thereafter*, a judge shall be elected for each of said circuits, who shall hold his office for the *term* of *four* years, and until his successor is elected and qualified."

A *quo warranto* was accordingly issued against WM. C. SCOTT, Judge of the *third* circuit, and a majority of this court held that he was entitled to hold out the remainder of his term, notwithstanding the amendment of the constitution changing the mode of electing the judges. Mr. Justice SCOTT dissenting. *State vs. Scott*, 4 *Eng. Rep.* 270.

On the 1st Monday of February, 1849, under the 4th section of the act of December 29th, 1848, above copied, Gould was elected

judge of the second circuit, for the full term of four years, from the date of his commission, (26th February, 1849.)

By *sec.* 1, *chap.* 61, *Digest*, the first Monday of August, 1846, and every two years thereafter, was set apart for general elections.

When the election of judicial officers was transferred to the people, the General Assembly thought proper to separate them from political elections, and fixed them upon the 1st Monday of February, 1849, and every two and four years thereafter.

But afterwards it was deemed expedient to change this policy, and, by act of January 11th, 1851, (*Pamph. acts*, 1850, *p.* 129,) the election of Judges and Prosecuting Attorneys was made to fall in with the other general elections; and it was provided, among other things, "That, after the first Monday in February, 1851, a circuit judge shall be elected, in each judicial circuit, at the first general election, after the expiration of the commission of the presiding judge thereof." This act makes no change in the act of 29th December, 1848, as to filling *vacancies* in *unexpired terms.*

On the 29th March, 1851, Gould resigned the office of judge of the second circuit, to take effect after the first Monday of August, 1851; and, at a special election, held on the first Monday of August, 1851, ordered by the Governor, under the act of 29th December, 1848, Murray was elected, and on the 18th of the same month, commissioned to fill the *vacancy* in Gould's term, which expired on the 26*th of February*, 1853; and Murray held over until the first general election thereafter, in August, 1854, when the defendant, Sorrells, was elected, and commissioned for a new term.

That these elections were in accordance with the enactments of the Legislature, there is no question, and we have already said that these enactments are to be upheld by the courts in the absence of any clear and manifest repugnance to the constitution. Our State Constitution is a limitation, and not (like the federal constitution) a grant of powers. The great residiuum of sover-

eignty is in the law making power; and the Legislature can pass any law which it is not expressly, or by necessary implication, prohibited from passing. *State vs. Ashley*, 1 *Ark.* 538; *Smith's Com.* 236 *to* 312; *State vs. Fairchild*, present term.

It is a settled principle, in the legal policy of this country, that it belongs to the judicial power, as a matter of right and of duty, to declare every act of the Legislature, made in violation of the constitution, or of any provision of it, null and void. 1 *Kent's Com.* 450. But the question whether a law is void, for its repugnancy to the constitution, is, at all times, a question of much delicacy, which ought seldom, if ever, to be decided in *a doubtful* case. It is not on slight implication and vague conjecture, that the Legislature is to be pronounced to have transcended its powers, and its acts considered void. The opposition between the constitution and the law, should be such, that the judge feels a clear and strong conviction of their incompatibility with each other. *Fletcher vs. Peck*, 6 *Cranch* 87; *Smith's Com.* 575, 576.

The view that we have taken of the power of the Legislature, to regulate the mode of filling *vacancies*, occurring in the regular terms of the judges of the circuits, between the periods fixed for general elections, is not only sustained by the case of *Smith vs. Halfacre*, 6 *How. Rep.* 582, but is in accordance with the established usage of the government, in reference to *vacancies* happening in other offices, which are filled by elections of the people, under original provisions of the constitution.

Thus it is provided that the qualified voters, &c., shall elect circuit clerks, sheriffs, coroners, county surveyors, treasurers, justices of the peace, constables, &c., who are to hold their respective offices for *the term of two years*, &c. *Constitution, art. VI., secs.* 7, 15, 16, 17.

The constitution is silent as to the mode of filling vacancies in these offices—it provides for the regular terms, but not for *vacancies* in such *terms*.

The Legislature has supplied the omission, and provided for filling all such vacancies. In some instances by Executive appoint-

ments, and in others by special elections; and, in all such cases, the vacancy is filled for the *remainder* of the *unexpired term*, and until the next general election. Thus the frequency of special elections is avoided, and a system of periodical general elections, is preserved. See *Digest, chap.* 165. The necessity, and wisdom of adopting the same policy in reference to filling *vacancies* occurring in the *terms* of the circuit judges, is manifest, and we do not doubt the power of the Legislature over the subject.

The demurrer of the State to the plea of the defendant, is overruled.