## McKEOWN *v.* STATE.

4105

124 S. W. 2d 19

Opinion delivered January 9, 1939.

John L. McClellan, for appellant.

Jack Holt, Attorney General, and Millard Alford, Assistant Attorney General, for appellee.

GRIFFIN SMITH, C. J. This appeal is from judgments rendered on directed verdicts finding the defendant guilty (1) of selling liquor on Sunday, and (2) of selling, in dry territory, beer containing alcohol in excess of 3.2 per cent. by weight.

Appellant owned and operated the Elite cafe in Malvern. On Sunday in August, 1938, the prosecuting attorney purchased Budweiser beer. Chemical analysis showed an alcoholic content of 3.76 per cent. by weight, and 4.70 per cent. by volume. The chemist testified that, in his opinion, the beer could be used as an intoxicating liquid. Testimony of other witnesses that Budweiser beer had made them drunk was admitted over defendant's objections. Grounds of objections were that the witnesses had not bought the beer from defendant, and that they did not know the alcoholic content.

Exceptions were saved to the court's action in holding that instructions received from the State Revenue Department, and a letter written by the Attorney General construing the law, were not admissible.

Evidence that the beer was sold on Sunday is not contradicted; nor is the chemist's testimony as to alcoholic content denied.

A fine of $25 for violating the Sunday law was assessed, this being the lowest penalty permitted by § 3421 of Pope's Digest.[1]

One of the early cases involving violation of a similar law was *Bridges* v. *State*, 37 Ark. 224. The indictment was under § 1618 of Gantt's Digest,[2] and the opinion was handed down in 1881. The court held that "Alcohol is embraced in one of the terms, *goods, wares,* or *merchandise*," and affirmed the judgment of conviction. In dealing with the same section of Gantt's Digest the court said, in *Seelig* v. *State*, 43 Ark. 96: "Where an act is in itself indifferent and only becomes criminal when done with a particular intent, there the intent must be proved. But if the act be unlawful, as to keep open a store on Sunday, the law implies the criminal intent, and proof of justification or excuse must come from the defendant." This opinion was in 1884. In March, 1885, the statute now appearing as § 3421 of Pope's Digest was enacted.

The section appearing in Gantt's Digest as 1618 seems to have been taken from Ch. XLIV, Revised Statutes, where it appears as § 5. There is a slight, but unimportant, variation in phraseology between Gantt's § 1618 and § 5 of Ch. XLIV, Revised Statutes, but with respect to each a section immediately following is: "Charity or necessity on the part of the customer may be shown in justification of the violation of the last preceding section." The quoted provision now appears as § 3422, Pope's Digest.

In appellant's brief it is urged that the law's intent was "to keep closed on Sunday all stores and general

---

[1] Pope's Digest, § 3421: "Every person who shall, on Sunday, keep open any store or retail any goods, wares and merchandise, or keep open any dram shop or grocery, or who shall keep the doors of the same so as to afford ingress or egress, or retail or sell any spirits or wine, shall, on conviction thereof, be fined in any sum not less than twenty-five dollars nor more than one hundred dollars."

[2] Gantt's Digest, § 1618: "Every person who shall, on Sunday, keep open any store, or retail any goods, wares, or merchandise, or keep open any dram-shop or grocery, or sell or retail any spirits or wine, shall, on conviction thereof, be fined in any sum not less than ten dollars nor more than twenty."

merchandise establishments, including dram shops and saloons. It does prohibit the sale of 'spirits or wine.' "
A summation of appellant's position appears in a footnote.[3]

We do not agree that the act of 1885 is to be regarded as "an old Sunday Blue Law"; nor is it a regulation based exclusively upon religious considerations. The contrary has been held.

An interesting discussion of the subject is to be found in *Swann* v. *Swann*, 21 Fed. 299. The opinion was written by Judge Caldwell in a controversy involving validity of a note executed in Tennessee on Sunday, enforcement of which was sought in Arkansas in 1884. Judge Caldwell quoted the Arkansas statute (now appearing as § 3418 of Pope's Digest) and § 1617 of Gantt's Digest.[4] The latter section was repealed, but a new law was passed in 1887 covering the same subject-matter. The 1887 enactment appears in § 3420 of Pope's Digest.[5]

[3] Counsel says: "The appellant . . . has engaged in [the cafe] business for a number of years. Beer of the alcoholic content testified to with respect to the bottle sold to the Prosecuting Attorney is a part of the regular stock of provisions and refreshments regularly served to customers of his restaurant business. The sale of such beer is now legal in this state and in the city of Malvern, and unless the prosecution and the lower court can invoke this old Sunday Blue Law to sustain a penalty against the appellant, he did not commit an illegal act. Therefore, under the law, the bottle of beer must be regarded and treated as any other beverage or refreshments generally and customarily served in restaurants and cafes. Since its sale is not illegal *per se*, it must be classed along with coffee, milk, tea, coca-cola, or other bottle beverages usually served at restaurants with food and meals. The beer sold is not wine, and neither is it 'spirits' as now defined by act 108."

[4] Gantt's Digest, § 1617: "Persons who are members of any religious society, who observe as Sabbath any other day of the week than the Christian Sabbath or Sunday, shall not be subject to the penalties of this act, so that they observe one day in seven, agreeably to the faith and practice of their church or society."

[5] Pope's Digest, § 3420: "No person who from religious belief keeps any other day than the first day of the week as the Sabbath shall be required to observe the first day of the week, usually called the Christian Sabbath, and shall not be liable to the penalties enacted against Sabbath breaking. Provided, no store or saloon shall be kept open or business carried on there on the Christian Sabbath; and provided further, no person so observing any other day shall disturb any religious congregation by its avocation or employment."

Referring to these provisions, Judge Caldwell said:

"It is obvious the statute does not attempt to compel the observance of the first day of the week, as a day of rest, as a religious duty. It would be a nullity if it did so. In this country legislative authority is limited strictly to temporal affairs by written constitutions. Under these constitutions there can be no mingling of the affairs of church and state by legislative authority. . . . . No citizen can be required by law to do, or refrain from doing, any act upon the sole ground that it is a religious duty. The old idea that religious faith and practice can be, and should be, propagated by physical force and penal statutes has no place in the American doctrine of government. Force can only affect external observance; whereas, religion consists in a temper of heart and conscious faith which force can neither implant nor efface. . . . The statute, then, is not a religious regulation, but is the result of a legitimate exercise of the police power, and is itself a police regulation.

"Experience has shown the wisdom and necessity of having, at stated intervals, a day of rest from customary toil and labor for man and beast. It renews flagging energies, prevents premature decay, promotes the social virtues, tends to repress vice, aids and encourages religious teachings and practice, and affords an opportunity for innocent and healthful amusement and recreation.

"While the law does not enforce religious duties and obligations as such, it has a tender regard for the conscience and convenience of every citizen in all matters relating to his religious faith and practice. The statute is catholic in its spirit, and accommodates itself to the varying religious faiths and practices of the people."

In *Scales v. State*, 47 Ark. 476, 1 S. W. 769, 58 Am. Rep. 768, Chief Justice Cockrill said: "The principle which upholds these regulations underlies the right of the state to prescribe a penalty for the violation of the Sunday law. The law which imposes the penalty operates upon all alike, and interferes with no man's religious be-

lief, for in limiting the prohibition to secular pursuits it leaves religious professon and worship free.''

In *Rosenbaum* v. *State,* 131 Ark. 251, 199 S. W. 388, L. R. A. 1918B, 1109, Mr. Justice Wood traced the origin of compulsory Sabbath observance.[6] In the Rosenbaum Case the undisputed evidence showed that the defendant operated a moving picture show in violation of the statute, and a directed verdict of guilty was upheld.

A more recent case (1926) is *Rhodes* v. *Hope,* 171 Ark. 754, 286 S. W. 877, 47 A. L. R. 1104. Upon undisputed proof that the defendant had sold gasoline on Sunday, in violation of a city ordinance patterned from the state law, the court directed a verdict of guilty. On appeal the judgment was affirmed. The opinion cites *Petty* v. *State,* 58 Ark. 1, 22 S. W. 654, and *Goff* v. *State,* 20 Ark. 290.

Trial courts are empowered to direct verdicts of guilty in misdemeanor cases where the punishment is by fine only if the facts are undisputed, and where from all the evidence the only inference to be drawn is that the alleged crime has been committed by the defendant in circumstances which do not disclose legal justification.[7]

[6] In the Rosenbaum Case Mr. Justice Wood said: "The Frank emperors had Sunday observed; the Code of Napoleon ordered it, and the observance of the Lord's day has been enjoined by statutes in England from the earliest times. Coming on down to the legislation in the mother country, which forms the basis of such legislation in practically all of the states of the Union, we find that in the reign of Charles II an act entitled, 'An act for the better observation of the Lord's day, commonly called Sunday,' was passed, which, among other things, provides: 'That no tradesman, artificer, workman, laborer, or other person whatsoever shall do or exercise any worldly labor, business, or work of their ordinary callings upon the Lord's day, or any part thereof (work of necessity and charity only excepted).' Stat. at Large, 29 Chas. II, Ch. 7, p. 412, (12 Chas. 3, p. 412)."

[7] In *Collins* v. *State,* 183 Ark. 425, 36 S. W. 2d 75, it was held that in the circumstances there shown the trial court did not have the right to direct a verdict of guilty. "Where the punishment may be imprisonment, or where the law provides that it may be fine or imprisonment, the trial judge has no power to direct a verdict." Citing *Roberts* v. *State,* 84 Ark. 564, 106 S. W. 952; *Wylie* v. *State,*

It may be urged that social intercourse, and personal, professional, and business relationships, have so changed within the past 53 years that the law promulgated in 1885 has become obsolete; that it should be treated as a dead letter decreed by custom and modern convenience to be a relic of other days. Answer to this argument is that courts are interpreters, and not the makers, of laws. As Chief Justice Cockrill said in the Scales Case, "If the law operates harshly, as laws sometimes do, the remedy is in the hands of the Legislature. It is not the province of the judiciary to pass upon the wisdom and policy of legislation—that is for the members of the legislative department,—and the only appeal from their determination is to their constituency."

The defendant in the instant case was guilty of violating § 3421 of Pope's Digest; and, since the statute imposes a fine only, and not less than $25 could be assessed, it was not error for the court to direct a verdict. We are not willing to say that beer, in the circumstances in which it was being sold, was a necessity. Obviously, the defendant understood that the prosecuting attorney was making the purchase in order to test the law. The conclusion is inescapable that the defendant was keeping his place of business open for general commercial purposes, and that beer was being sold regularly and generally.

The next question is whether the sale of beer of the alcoholic content reflected by the record was unlawful in Malvern at the time in question.

Act No. 7 of the Extraordinary Session of 1933, p. 20, § 2, defines beer as "any fermented liquor made from malt or any substance thereof and having an alcoholic content of not in excess of 3.2 per cent. by weight." Such beer was legalized under terms of the act.

---

131 Ark. 572, 199 S. W. 905; *Parker* v. *State*, 130 Ark. 234, 197 S. W. 283; *Snead* v. *State*, 134 Ark. 303, 203 S. W. 703; *Burton* v. *State*, 135 Ark. 164, 203 S. W. 1023; *Huff* v. *State*, 164 Ark. 211, 261 S. W. 654. But in the Collins Case it was held that an instructed verdict may be given where the punishment is by fine only, etc.

By § 27-A,[8] provision was made for special elections in the several counties, upon petition of 51 per cent. of the qualified electors of any county presented to the county court within sixty days from the effective date of act 7. If a majority of the qualified voters opposed the sale of beer, such sale was prohibited. At the succeeding regular election the question might be submitted under the initiative and referendum amendment to the Constitution (which permits 15 per cent. of the electors to initiate a law).

Act No. 108 was approved March 16, 1935. It authorizes the manufacture, sale, transportation, possession, or other disposition of spirituous, vinous, and malt liquors. By § 6 of Art. 1 the word "malt" is defined as "liquor brewed from the fermented juice of grain and containing more than five per centum of alcohol by weight." There is this further provision: "Beer containing not more than five per centum of alcohol by weight and all other malt beverages containing not more than five per centum of alcohol by weight are not defined as malt liquors, and are excepted from each and every provision of this act. It is further provided that malt and vinous beverages containing more than 3.2 per cent. of alcohol by weight and not more than 5 per cent. of alcohol by weight shall be taxed and regulated as provided for malt and vinous beverages containing not more than 3.2 per cent. alcohol by weight under the provisions of act 7 [of 1933]."

---

[8] Section 27-9 of act 7 of 1933, in part, is: "At each general election for state and county offices after the passage of this act, or at a special election called by the county court upon a petition of 51 per cent. of the qualified electors of the county presented within sixty days next after the passage of this act, there may be submitted to the qualified electors of any county in the state of Arkansas so desiring in the manner provided for the submission in a county of the question under the initiative and referendum provision of the Constitution and laws of the state of Arkansas the question as to whether the sale of beer and light wine containing alcohol not in excess of 3.2 per cent. by weight shall or shall not be permitted within said county for two years in case the matter is voted on at a general election and in the case of a special election the question shall be voted on as to whether the sale of beer and light wine containing alcohol not in excess of 3.2 per cent by weight shall or shall not be permitted until the day of the next general election."

It will be observed that after defining the word "malt" to mean *liquor containing more* than 5 per cent. alcohol, beer containing *not more* than 5 per cent. alcohol is excluded from the provisions of act 108 and "malt and vinous beverages" containing *more* than 3.2 per cent. of alcohol, and *not more* than 5 per cent. of alcohol, "shall be taxed and regulated as provided for *malt and vinous beverages* containing not more than 3.2 per cent. alcohol."

The intent, as expressed by the language used, is to classify beer having an alcoholic content of not more than 5 per cent. as a *malt beverage,* as distinguished from *malt liquor.*

Section 1 of art. 7 of act 108 permits 35 per cent. of the voters of any county, city, town, district, or precinct, to petition the county court for an election upon the proposition whether "spirituous, vinous or malt liquors shall be sold, bartered, or loaned therein." Section 4 of art. 7, with respect to such election, directs that if a majority "shall be in favor of prohibiting the sale of liquor in the territory in which the election shall have been held, the law prohibiting such sale shall be in full force and effect at the expiration of sixty days from the date of the entry of the certificate of the canvassing board." Penalty for violation is a fine of not less than $60 nor more than $100, and confinement in the county jail for not less than 20 days nor more than 40 days.

An election was held in Malvern in 1935 on petition of 218 of the 492 qualified electors of the city—218 being more than 35 per cent. of 492. The county court order recites that such election was held under authority of act 108 to determine whether "intoxicating liquors shall be sold, loaned, bartered in any hotel, dispensary, club, restaurant, or any other place or thing within the city of Malvern." By a vote of 179 to 118 such liquor traffic was prohibited.

It is contended by appellant that because the Malvern election was under authority of act 108, and because the election had for its purpose the sounding of public sentiment on the question of selling liquor as defined in the act, beer of an alcoholic content of not more than 5 per cent. was not within the purview, and could not be, since

act 108 by express terms declares such beer to be a beverage and not a liquor. Therefore, it is insisted, control of sale of the beverage is referable to act 7 of 1933. It is further argued that act 7 contemplates the county as a unit, and under such act a city may not prohibit the sale of beer.

It must be conceded that the language of acts 7 and 108 in so far as, it has been quoted by appellant justifies the result contended for. Act 7, by its terms, contemplates a county-wide vote, and sections one to four, inclusive, of art. 7 of act 108, deal with a drink having an alcoholic content of more than five per cent. If act 108 ended where appellant has terminated his citation of its terms, clearly his position would be sound.

But we must consider all of the act, rather than its partial recitals, to determine the legislative intent.

Section 5, art. 7, act 108, contradicts appellant's theory that the beer in question may be legally sold until, in a county-wide election conducted under authority of act 7 (on petition of 51 per cent. of the electors) the voters have expressed opposition to the traffic.

Section 5 is: ''It shall be unlawful for anyone to sell, barter or loan, directly or indirectly, *any beverage containing any alcohol;* or any liquid mixture or decoction of any kind which produces or causes intoxication in any county, city, town, district or precinct in which the sale, barter or loan of spirituous, vinous or malt liquors is or shall be prohibited in accordance with the local option law.''[9]

This section permits prohibition of the sale of malt liquors, etc., and it contemplates procedure as set out in the act—not procedure under authority of act 7. The first six words on page 260 of the printed acts of 1935

---

[9] Section 5 of art. 7 of act 108 of 1935, in addition to that part quoted in the opinion, also provides. "Any person who shall sell, barter or loan, directly or indirectly, any such beverage, liquid mixture or decoction in any such county, city, town or precinct, shall, upon conviction, be fined the sum of not less than $20 nor more than $100 for each offense or any sale, barter or loan of any article with the agreement expressed or imposed that the right or title to or possession of any such beverage, liquid, mixture or decoction, shall also pass, shall be considered a sale, barter or loan within the terms of this act."

are: "The word 'malt' shall mean liquor." The optional vote authorized by § 1 of art. 7 relates to the sale of "spirituous, vinous or malt liquors," and. the sale of such may be prohibited in the manner set out in act 108.[10]

The election in Malvern was in conformity with act 108. The only vice urged against it is that authority to prohibit the sale of beer of not more than 5 per cent. alcoholic content is not within the act.

Article 9 of act 108 repeals all conflicting laws or parts of laws—

"Provided, however, that this act is not intended to repeal or conflict in any way . . . with the taxing provisions of act No. 7 of the Extraordinary Session of the Forty-Ninth General Assembly of the state of Arkansas, approved August 24, 1933."

Specifically, the Legislature, by the language of art. 9, has said that it did not intend to repeal the *taxing* provisions of act 7. It did intend, as we have seen, to substitute a permissive and increased alcoholic content for beer; and it is our view that it intended to provide new local option machinery.

It will be observed that the mandate of § 5 of act 108 applies only to areas where the "sale or loan of spirituous, vinous, *or malt liquors* shall be prohibited *in accordance with the local option law.*" .

If it be said that the only local option law applicable to beer of not more than 5 per cent. alcoholic content is act 7 of 1933, we are met with the contradiction that the 1933 enactment does not apply to cities, towns, precincts, or districts. It is inconceivable that the framers of act 108, and the Legislature that passed it, could have intended, by § 5, to require proponents of prohibition to proceed under a statute which could afford them no relief in any subdivision less than a county. Article 9 dis-

---

[10] We pretermit a discussion of Amendment No. 7 to the Constitution, commonly referred to as the Initiative and Referendum Amendment. One of its provisions is: "Fifteen per cent. of the legal voters of any municipality or county may . . . invoke the initiative upon any local measures." Under "Definition," the word "measure" is construed to be "any bill, law, resolution, ordinance, charter, constitutional amendment or legislative proposal or enactment of any character."

pels such theory. It will not be assumed that the law-makers, in one sentence, extended an option, and in another sentence withdrew it.

It is not necessary, in this opinion, to determine whether the language in § 5 of act 108 prohibits the sale in dry territory of a beverage containing "*any alcohol,*" or whether it merely prohibits sale of "a liquid mixture or decoction of any kind which produces or causes intoxication." Following the word "alcohol" in § 5 a semicolon is used, followed by "or," a co-ordinating particle that marks an alternative. However, proof in the case at bar is sufficient to show that the beer sold by appellant contained enough alcohol to cause intoxication in certain circumstances, and with respect to certain people. Dr. Manglesdorf, the chemist, testified that 3.2 beer is intoxicating "if you drink enough of it." He also testified: "It is generally conceded by medical men that you can get stimulation and sufficient disorganization of the mental equilibrium to become intoxicated [by drinking 3.2 beer]."

In *State* v. *Hutchinson*, 194 Ark. 1057, 110 S. W. 2d 7, the defendant below was charged with selling intoxicating liquors in a pool room. The question was whether 5 per cent. beer (as distinguished from beer having an alcoholic content of "more than 5 per cent.") was intoxicating. In discussing act 108 of 1935 the opinion says: "[The act] says in the latter part of § 6 [of art. 1] that 'beer containing not more than 5 per cent. of alcohol by weight and all other malt beverages containing not more than 5 per cent. of alcohol by weight are not defined as malt liquors, and are exempt from each and every provision of this act.' This is far from saying that 5 per cent. beer is not an intoxicating liquor. The effect of the words quoted above are that said act 108 excludes from its taxation and regulation malt and vinous beverages containing more than 3.2 per cent. of alcohol and not more than 5 per cent. of alcohol."

The opinion then mentions certain provisions of act 7 of 1933, and continues: "We are not willing to construe these acts as saying that the Legislature passing them intended to say that 5 per cent. beer was non-

intoxicating liquor. Such a declaration on the part of the Legislature would be arbitrary and contrary to what everybody knows.''

Other authority is to the same effect.

The judgment of conviction for violating the Sunday law is affirmed.

Violation of § 5 of art. 7 of act 108 is punishable by a fine of not less than $20 nor more than $100. No jail sentence is imposed. The trial court directed a verdict calling for a fine of $60 and imprisonment in the county jail for a period of twenty days. This was error. The judgment rendered on this verdict is reversed and the cause is remanded with directions that the provisions of § 5 of art. 7 are applicable. However, a new trial on this charge must be had. It is so ordered.

SMITH, J., concurs.

McHANEY and BAKER, JJ., dissent.

McHANEY, J. (dissenting). Appellant was charged by information with two alleged offenses: 1. with selling liquor on Sunday; and 2, with selling beer containing alcohol in excess of 3.2 per cent. in dry territory. He was convicted by instruction of the court on both charges, fined in the first and fined and ordered imprisoned in the second. The majority have affirmed on the first and reversed and remanded on the second because the court cannot instruct a verdict of guilty where the punishment involves imprisonment. I concur in the judgment of reversal, but go further and would hold that appellant should be discharged on both charges.

Discussing the second charge first, I am of the opinion that appellant did not violate the law and that the information did not state a public offense. The facts are that the city of Malvern held a referendum election under the provisions of act 108 of 1935, and voted dry as to the liquors covered by that act. Such an election requires a petition equal to 35 per cent. of the qualified voters before the county judge shall order such election, and the question submitted to the voters is ''whether or not spirituous, vinous or malt liquors, shall be sold, bartered or loaned'' in any ''county, city, town, district, or precinct.'' But, as heretofore stated, the result of such

election applies only to such liquors as are covered by said act. Section 6 defines the words "spirituous," "vinous" and "malt" and as to the last says: "The word 'malt' shall mean liquor brewed from the fermented juices of grain and containing more than five (5%) per centum of alcohol by weight. Beer containing not more than five (5%) per centum of alcohol by weight and all other malt beverages containing not more than five (5%) per centum of alcohol by weight are not defined as malt liquors, and are excepted from each and every provision of this act.

"It is further provided that malt and vinous beverages containing more than 3.2% of alcohol by weight and not more than 5% of alcohol by weight shall be taxed and regulated as provided for malt and vinous beverages containing not more than 3.2% of alcohol by weight under the provisions of act No. 7 of the Acts of the Extraordinary Session of the General Assembly of 1933, approved August 24, 1933." The repealing section of said act 108 is very significant and is as follows: "All laws or parts of laws in conflict herewith are hereby repealed; provided, however, that this act is not intended to repeal or conflict in any way with the taxing provisions of act No. 4 of the Second Extraordinary Session of the Forty-ninth General Assembly of the State of Arkansas, approved January 12, 1934; nor with the taxing provisions of act No. 7 of the Extraordinary Session of the Forty-ninth General Assembly of the State of Arkansas, approved August 24, 1933, nor with act No. 9 of the Second Extraordinary Session of the Forty-ninth General Assembly of the State of Arkansas, approved January 26, 1934, and in case there is any conflict between the taxing provisions of this act and either of the former acts hereinbefore mentioned, the provisions of the former act or acts shall be the law and govern the case."

Act No. 4 and act No. 9, mentioned above, are not material to this inquiry, but act No. 7 is and will now be discussed. It is entitled "An Act to Permit the Manufacture, Sale and Distribution Within the State of Arkansas of Light Wines and Beer, and to Provide for Taxing the Manufacture, Sale and Distribution of Such Prod-

ucts, and for Other Purposes.'' It was the first step in the repeal of prohibition made in this state. It legalized the manufacture and sale of light wines and beer. It defined these terms as follows: ''The term 'Beer' means any fermented liquor made from malt or any substitute therefor and having an alcoholic content of not in excess of 3.2 per cent. by weight.''

''The term 'light wine' means the fermented liquor made from malt or any substitute therefor and having an alcoholic content of not in excess of 3.2 per cent. by weight.'' This definition is erroneous as shown by the original bill and should read: ''The term 'light wine' means the fermented juice of grapes or other small fruit including berries and having,'' etc., as above. Also intoxicating liquor is defined to ''mean vinous, ardent, malt fermented liquor or distilled spirits with an alcoholic content in excess of 3.2 per cent. by weight.''

It appears to me that the necessary effect of said act 108 is to repeal these definitions in said act 7 and to substitute the definitions in act 108 for those in act 7. They are most certainly in conflict and the repealing section of 108 specifically says it repeals all laws or parts of laws in conflict with it, except as to the taxing provisions of the acts mentioned therein. The conclusion is irresistible to me that beer containing 5 per cent. or less of alcohol by weight is not now, nor has it been since the passage of act 108 of 1935, classed by the legislature as intoxicating liquor and that such beer can be lawfully sold in all parts of the state, except where it has been voted out under the provisions of said act 7 of the Special Session of 1933, which provides the precedure in § 27-A. There the question may be submitted to the whole county and not to a part thereof and, if by a petition, it must contain 51 per cent. of the qualified electors of the county.

It is undisputed in this case the beer for which appellant is convicted of selling contains more than 3.2 per cent., but less than 5 per cent. of alcohol by weight. Therefore, the provisions of said act 108 have no application and a referendum election held under the provisions thereof could only bar the liquors covered by that

act—in the case of beer, of an alcoholic content of more than 5 per cent., and since appellant is not selling beer of more than 5 per cent. he cannot be convicted of a violation of that act.

Act 108 of 1935, art. 7, § 5, provides: "It shall be unlawful for anyone to sell, barter or loan, directly or indirectly, any beverage containing any alcohol; or any liquid mixture or decoction of any kind which produces or causes intoxication in any county, city, town, district or precinct in which the sale, barter or loan of spirituous, vinous or malt liquors is or shall be prohibited in accordance with the local option law," and making it an offense punishable by a fine only for a violation thereof. Just what does this quoted language mean? My thought is it must be read in connection with the other provisions of the act and that it means that it shall be unlawful to sell any "spirituous," "vinous" or "malt" liquors as these words are defined in the act in any territory which has voted dry under the provisions of the act, bearing in mind that, under the express provision above quoted from art. 1, § 6, "beer containing not more than 5% of alcohol by weight and all other malt beverages containing not more than 5% of alcohol by weight are not defined as malt liquors, and are excepted from each and every provision of this act." We must, therefore, read the prohibition in § 5, art. 7, above quoted as applying only to beverages, liquid mixtures or decoctions containing more than 5% of alcohol by weight, instead of beverages "containing any alcohol," or liquid mixtures or decoctions "which produces or causes intoxication." To construe this provision of the act otherwise is to make it applicable to beer "containing not more than 5% of alcohol by weight" as well as all other malt beverages with a like content, in the very teeth of the provision excepting them "from each and every provision of this act."

My conclusion on this charge of the information is that the demurrer should have been sustained, as it fails to charge a public offense.

As to the charge of selling liquor on Sunday, the information charges it to have been done in violation of § 3421 of Pope's Digest and § B of art. 6 of act 108 of the

Acts of 1935. This charge is based on the sale of the same bottle of beer, on a Sunday, as that relied on on the other charge above discussed. He was convicted under said § 3421 of Pope's Digest. The information evidently refers to subsection (b) of § 1 of art. 6, and the court evidently found that this section had no application to the kind of beverage sold. Section 3421 of Pope's Digest is act 33 of 1885 amending § 1887 of the Revised Statutes to read as follows: "Every person who shall, on Sunday, keep open any store or retail any goods, wares, and merchandise, or keep open any dram shop or grocery, or who shall keep the doors of the same so as to afford ingress or egress, or retail or sell any spirits or wines, shall, on conviction thereof, be fined in any sum not less than twenty-five dollars nor more than one hundred dollars."

This section has no application to the facts in this case and cannot, in my opinion be the basis of a conviction of appellant. The only part of it that has any possible bearing on this case is the prohibition against the retailing or selling "any spirits or wine." He is not charged with keeping open any store, or that he retailed any goods, wares or merchandise, nor that he kept open any dram shop or grocery. The charge is that he "did unlawfully sell liquor, and was unlawfully interested in the sale and giving away of alcoholic, vinous, malt spirituous, fermented and medicated liquors on Sunday," etc. The proof was that appellant is engaged in the restaurant or cafe business, in the city of Malvern and that on Sunday, August 13, 1938, he sold a bottle of "Budweiser" beer containing 3.76% of alcohol by weight, and that beer of more than 3.2% and 5% or less is being sold all over Arkansas and in territory that has voted dry under act 108, on Sunday and every other day. Appellant did not sell any "spirits or wine" and was not so charged, and there was no proof to sustain such a charge had it been made. "Spirits" means spirituous liquors as defined in act 108 and must contain "more than 21% of alcohol by weight. The sale of wine is governed by act 69 of 1935, wine being excepted from the provisions of act 108 where the term "vinous" is defined. In so far as said

§ 3421, Pope's Digest, (act 33 of 1885) applies to the sale of "spirituous," "vinous" and "malt" liquors is concerned, it has been repealed by act 108 of 1935 and act 69 of 1935, where the sale of these beverages is regulated and where sales on Sundays, election days, to minors and otherwise are specifically prohibited.

The commissioner of revenues is given authority to administer the provisions of these acts herein referred to and to make rules and regulations regarding their enforcement. There has never been a referendum election under the provisions of said act 7, and the department now rules that it is not a violation of law to sell beer in dry territory, that is, territory which has voted dry under act 108, which has an alcoholic content of 5% or less by weight, or light wine of 5% or less, and that it may be so sold on any day, Sunday or election day, because it is not a liquor covered by the provisions of act 108. It is an admitted fact, and would have been given in evidence in this record, but was excluded by the court, that such beverages are being so sold all over Arkansas, with the knowledge, consent, or at least, the acquiescence of the state commissioner of revenues who holds that it is not a violation of law to sell same in so-called "dry territory" or on Sunday or any other day, if the beverages are tax paid and the dealer holds a license. It would seem to me to be a great injustice for the state to license a dealer to do the very things appellant did, and then to prosecute him for doing them.

Administrative or executive construction of statutes and long time operation under such construction are entitled to great weight and consideration by the courts, and if a reasonable construction may be made by the courts conformable with executive construction it should be done. In *Baxter* v. *McGee,* 82 Fed. 2d 695, certiorari denied by United States Supreme Court; and *McGee* v. *Baxter,* 298 U. S. 680, 56 S. Ct. 948, 80 L. Ed. 1401, it was held that considerable weight, in arriving at the meaning of a doubtful statute, must be given to the practical construction placed upon it by the executive officers of the state, especially when such construction has been unchallenged over a long period of years. See, also, *State* v.

472

*Sorrels,* 15 Ark. 664; *State* v. *Lancashire Fire Ins. Co.,* 66 Ark. 466, 51 S. W. 633, 45 L. R. A. 348. In *Moore* v. *Tillman,* 170 Ark. 895, 282 S. W. 9, it was held that the interpretation of federal homestead laws by the Federal Land Department, though not controlling on courts, is highly persuasive, and, where in harmony with United States Supreme Court's decision, must govern. Act 7 of 1933 has been in force nearly six years and act 108 of 1935 has been in force nearly four years, and during all this time they have been given the interpretation and have been administered as herein contended, and I think the court should not now, at this late day, disturb such construction. I am, therefore, of the opinion that the state failed to make a case against appellant on this charge, and that a directed verdict should have been given in his favor.

To the extent the views herein expressed may be in conflict with *State* v. *Hutchison,* 194 Ark. 1057, 110 S. W. 2d 7, I would overrule same.

I would reverse and dismiss both charges and am authorized to say that Mr. Justice BAKER concurs in this dissent.