The Honorable Steve Bell State Senator 500 East Main, Suite 208 Batesville, Arkansas 72501
Dear Senator Bell:
This is in response to your request for an opinion on whether "House Bill 2120 prohibits members of the Arkansas Home Vintner Club in `dry' counties from making wine in their homes, where the wine is strictly for personal consumption and not for sale."
It is my opinion that House Bill 2120, which became identical Acts 1010 and 1060 of 1997, does not address the legality of such conduct, but pre-existing law makes such manufacture unlawful.
The subtitle of each of the relevant acts states a purpose of "Amend[ing] Various Sections of Title 3 of the Arkansas Code to Make Technical Corrections Involving the Administration of Duties and Powers of the Alcoholic Beverage Control Division." Section 2 of each Act amends A.C.A. § 3-5-407(1), which is a provision setting licensing fees for the manufacture of native wine. The section, as amended, now provides as follows:
 (1) For the privilege of manufacturing native wine in quantities not to exceed five thousand (5,000) gallons, a license fee of one dollar ($1.00) per thousand gallons shall be paid by the manufacturer. However, any person in this state shall have the right to manufacture, free from this license fee, from grapes, berries, or other fruits or vegetables grown in the State of Arkansas, native wine or light wine for consumption in their home by themselves and guests, but not for sale, in quantities not to exceed two hundred (200) gallons. Provided, nothing herein shall be deemed to authorize the manufacture of wine or light wine in any area which has voted against the manufacture or sale of intoxicating liquors.
A.C.A. § 3-5-407 (1), as amended by Section 2 of Acts 1010 and 1060 of 1997. (Emphasis added).
As can be seen from a reading of this language, the Act is not intended to authorize the manufacture of wine or light wine in dry territories. This proviso was necessary in order to limit the language of the preceding sentence which stated that "any person in this state shall have the right to manufacture . . . native wine or light wine for consumption in their home." (Emphasis added).[1] The proviso was necessary in order to ensure that this language would not be construed to include manufacture in dry territories. Manufacture of wine in such territories is prohibited by the provisions of pre-existing law, namely by the "local option" laws which allow citizens to vote their territories "dry." For example, under the provisions of Initiated Act 1 of 1942, local citizens in a geographic territory may petition under what is referred to as a "local option" to determine whether "all alcoholic beverages, including all kinds and types of whiskey, beer, and wine, shall be manufactured or sold, bartered, loaned, or given away therein." A.C.A. § 3-8-202. It is unlawful for any person, firm, or corporation to manufacture, sell, barter, loan or give away intoxicating liquor in any county, township, municipality, ward, or precinct in which the manufacture or sale of intoxicating liquor is prohibited under the provisions of this local option law. See A.C.A. § 3-8-209.[2]
It has been stated that the general laws which govern the sale and manufacture of intoxicating liquor are held in abeyance when a county votes dry. See Grubbs v. Rowland, 226 Ark. 874, 296 S.W.2d 201 (1956). Thus, act 1010, which authorizes certain manufacture of native wine by "any person in this state" cannot operate in a dry county unless the legislature has somehow overridden or amended the provisions of the local option laws. As can be seen from a reading of Act 1010, the legislature has not attempted to do this with regard to the manufacture of native wine in a dry territory. In any event, any new laws authorizing the manufacture or sale of intoxicating liquors in dry counties may not supersede or amend the local option provisions of Initiated Act 1, absent a two-thirds vote of the legislature. See, e.g., Carter v. Reamy,232 Ark. 211, 335 S.W.2d 298 (1960), and Arkansas Constitution, Amendment 7. It is not unlawful to possess or consume certain amounts of liquor in dry territories (see, e.g., Morris v. Torch Club, 278 Ark. 285,645 S.W.2d 938 (1983) and A.C.A. §§ 3-3-306 and 3-3-307), but it is unlawful to "manufacture" it where a local option election has so decreed.
It is therefore my opinion that in counties which have voted "dry" under local option laws, the manufacture of wine in those counties by members of a "home vintners club" is prohibited. The language of the applicable local option laws requires this result. H.B. 2120, which became Acts 1010 and 1060 of 1997, does nothing to change this result.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh
[1] This act authorizes such home manufacture in "wet" counties without payment of a license fee. An earlier 1991 act (Act 913 of 1991) authorized such manufacture free from applicable taxes. See A.C.A. 3-5-409(c).
[2] "Intoxicating liquor" is defined as "any beverage containing more than one-half of one percent (0.5%) of alcohol by weight." A.C.A. §3-8-201. The provisions of another local option law, Act 108 of 1935 (codified at A.C.A. §§ 3-8-301 to -317), do not as specifically address the "manufacture" of alcoholic beverages, but refer most often to the "sale, barter or loan" of "spirituous, vinous, malt, or other liquors."Cf. however, A.C.A. § 3-8-306, which does refer to the "manufacture" of such liquors. It appears that a previous election held pursuant to the 1935 act, as well as under the provisions of the 1942 initiated act, would prohibit the manufacture of wine in a dry territory. See A.C.A. §3-8-202, McKeown v. State, 197 Ark. 454, 124 S.W.2d 19 (1939), and Publisher's Notes to A.C.A. § 3-8-301.