WADE *v.* HORNER.

Opinion delivered November 9, 1914.

HAVIS *v.* PHILPOT.

Opinion delivered November 9, 1914.

1.  LIQUOR—LICENSE TO SELL—CONSTITUTIONAL LIMITATION.—The act of 1913, page 180, No. 59, providing that licenses to sell liquor shall be granted only upon petition of a majority of the adult white inhabitants of a city or town, is not in violation of the Constitution, in not providing that colored persons may join in the petition. (*McClure* v. *Topf & Wright,* 112 Ark. 342, cited and approved).

2.  LIQUOR—LICENSE TO SELL—DISCRETION OF COUNTY JUDGE.—Under act 59 p. 180, Acts 1913, a county judge has a discretion as to whether he will grant licenses to sell liquor, and the act merely imposes a condition which must be met before the judge may exercise that discretion.

3.  LIQUOR—LICENSE TO SELL—CONSTITUTIONAL LIMITATIONS.—The act of 1913, No. 59, p. 180, known as the Going Act, does not deprive a colored citizen of the right to remonstrate against the issuance of

liquor licenses, nor does it prevent the issuance of a license to a colored person to sell liquor.

4. LIQUOR—LICENSE TO SELL—CONDITIONS—POLICE POWER.—The authority to sell liquor is a mere privilege, which the State may grant or withhold as it pleases, and if it grants permission, it may do so under any conditions which it cares to impose, and these conditions may be so onerous as to amount to virtual or absolute prohibition.

5. LIQUOR—LICENSE TO SELL—REQUIREMENTS—VALIDITY.—The provision that liquor shall be sold only upon petition of a majority of the white adult residents in a given community, is a valid requirement.

Appeal. from Garland Circuit Court; *Calvin T. Cotham,* Judge; affirmed.

Appeal from Jefferson Chancery Court; *John M. Elliott,* Chancellor; affirmed.

STATEMENT BY THE COURT.

The appeals in the above styled cases come from different courts, but involve the same questions and are, therefore, considered together.

In the appeal from the Garland Circuit Court, the facts are that a petition was filed by C. J. Horner, and others, in the county court of Garland County on January 1, 1914, by the adult white inhabitants of the city of Hot Springs, in that county, for the purpose of empowering the county court to grant license for the sale of intoxicating liquors under the provisions of the act of the Legislature numbered 59, entitled, "An Act to regulate the issuance of liquor license in Arkansas," approved February 17, 1913, as the same appears in the Acts of 1913, at page 180, and commonly known as the Going Act. On January 14, 1914, C. M. Wade filed his petition, "in behalf of himself and all others similarly situated," alleging that he was a citizen of the State of Arkansas, of African descent, a legal voter in the city of Hot Springs, Garland County, and residing within the incorporated limits of said city, and, as such inhabitant and voter, was interested, as well as all other colored citizens who were adult inhabitants of the said city of Hot Springs, in

the granting or refusal to grant liquor license in said city and county. That the law under which the petitioners, Horner and others, were proceeding was unconstitutional and void, for the reason that the same is in the nature of an election to determine whether license shall be issued or not, and limits the right to sign the petition to adult white inhabitants, and makes the action of the court on said petition depend upon the finding as to whether a majority of the white adults of the city have signed the same. That petitioner and members of the race to which he belongs were refused the right to sign the petition, and no provision was made for the exercise of the right of suffrage by them, but the court could consider only the signatures of members of the white race, and that such petitioners were given the exclusive right to dictate to all others whether license should be granted for the sale of liquors or not, or, at least, authorized the courts to act in that behalf. It was further alleged that the court's action would affect all members of the African race in regard to their taxes, police regulations, and suffrage, and that the said act under which the proceedings were had was, and is in violation of the following articles of the State Constitution, towit: Sections 1, 3, 4, 8, 12, 18, 19 and 29, of article 2; section 1 of article 3; section 3 of article 3; and Amendment No. 10 of said Constitution. Petitioners aver that they proceed under the authority of section 13, of article 16, of the Constitution of the State, which provides ''that any citizen of any county, city or town may institute suit in behalf of himself and all others interested to protect the inhabitants thereof against the enforcement of any illegal exaction whatever,'' and further allege that the said act of the General Assembly of the State of Arkansas violates the Fourteenth and Fifteenth Amendments to the Constitution of the United States, in as much as it makes an arbitrary classification of citizens who occupy exactly the same relation to the subject-matter with which it deals and grants privileges and advantages to citizens, or a class of citizens and inhabitants, which, upon the same terms,

circumstances and considerations, apply equally to all citizens and inhabitants, and for this reason the same is void and of no effect. The petition concluded with the prayer that "the petition of said C. J. Horner and others be dismissed, and that the court proceed in the matter of granting or refusing license in the same manner as if said petition had never been filed and said law never been enacted." The county court refused to take jurisdiction of the petition for the reasons stated in its order; that the court was asked to declare the Going Act unconstitutional.

On the 27th day of January, 1914, the petition of Horner and others was granted by the county court, and certain white citizens of Hot Springs, who, on their motion, had been made parties to the proceeding, appealed to the circuit court, and, on the 20th of April, Wade and others prayed, and were granted, an appeal to the circuit court; and on June 1, 1914, the circuit court dismissed the petition of Wade "for and on account of the fact that the Supreme Court of Arkansas has held the law under which the petition of Horner and others was filed constitutional and valid, and for that reason alone." Wade excepted to this action of the court and has duly prosecuted this appeal.

In the other appeal the facts are that on the 12th day of January, 1914, appellant Ferd Havis, for himself and on behalf of numerous other persons who were members of the African race, brought an action against C. M. Philpot, as county judge of Jefferson County, to restrain him from considering a petition to be presented by F. M. Rosenberger, Henry Hanff, and others, in pursuance of the Going Act, for the reason that said act provided that only adult white inhabitants are permitted under said act to petition the county judge upon the question, whether liquor license shall be granted, and that petitioner, a negro, and others of his race, are denied the right to sign such petition or remonstrate, and that the same is oppressive and highly discriminative, and is in conflict with

the Constitution of the State of Arkansas and of the United States.

*Irving Reinberger* and *Davies & Ledgerwood,* for appellants.

1. The Going Act discriminates against the African race and is unconstitutional. Injunction is the proper remedy. 216 U. S. 146; *Ib.* 165; 195 *Id.* 223; 16 S. W. 489; 166 S. W. 174; art. 2, § 18, Const. Ark.; 14 Amend. Const. U. S. It abridges the *privileges* of and denies the equal protection of the law to, colored people, citizens. 43 Ark. 42-54; 19 A. & E. Enc. Law, 120; 184 U. S. 540-588; 143 *Id.* 135; 118 *Id.* 356; 87 L. R. A. 76.

2. The objection to the act is that it is a discrimination between adult inhabitants, as to the imposition of a police regulation, which is determined solely by a petition by white adults when the result affects also the negro race. Art. 18, § 13, Const. Ark.; *Ib.,* art. 2, § 18; 122 S. W. 123; 108 Mo. 82 S. W. 645; 30 Cyc. 15-34; 109 U. S. 855; 170 Ind. 199; 110 U. S. 651; 203 *Id.* 24; 109 *Id.* 3-20-22. The act is void.

No brief for appellees.

SMITH, J., (after stating the facts). It is seen from the statement of facts that the same question is involved in each of these appeals. It does not appear in either case whether the appellants desired the issuance of liquor license or not, as neither of them state in their petition what action they desired the county court to take in that behalf. The burden of their complaint is that the county court in each instance should have proceeded to a consideration of the determination of its policy in regard to the issuance of liquor license without reference to the requirements of the Going Act, and that this is true because said act contravenes the various sections of the Constitution of this State and of the Constitution of the United States set out in the petitions. Appellants argue that the act in question constitutes a discrimination against them on account of their race, in that they are alike interested with white citizens of the State in the

determination of the policy of the court in regard to the issuance of liquor license and that the Going Act prescribes a procedure which is, in effect, an election, and the exclusion of members of the African race from participation in the decision of this question is a deprivation of a privilege granted to them alike by the Constitution of this State and of the United States. It is argued that there are many communities in this State where the African race largely predominates and that in these, as well as in all other communities, they are deprived of any right to participate in the determination of the policy in regard to the issuance of liquor license.

These arguments are not new and are not now being presented for our consideration for the first time. The appellants in one of the cases recognize the force of our decision in the case of *McClure* v. *Topf & Wright,* **112 Ark. 342, 166 S. W. 174,** but insist that that decision should not control here, because the parties to that litigation were not in a position to raise the questions now presented, for the reason that none of the parties to that litigation were members of the African race, and that, as only a member of that race can raise these questions, the decision in the McClure case, *supra,* is not decisive of the present case. But we do not agree with this view. The opinion in the McClure case, *supra,* makes no mention of the fact that the parties to that litigation were members of the white race, and we there considered all the arguments now advanced, and the authorities were reviewed in the opinion of this court, and the Going Act was there upheld as a constitutional enactment. In that case we expressly held that a proceeding under the Going law was not an election, and it was further held that the right to sign the petition there provided for was not a privilege, but that the presentation of a petition, signed by a majority of the adult white inhabitants of any given municipality, was a mere condition which the Legislature had seen fit to impose before license to sell liquor might be granted to any one. It was pointed out in that case that the act did

not undertake to prescribe the class of persons to whom liquor license might be granted, and there is nothing in the act which gives to any white person the right to sell liquor, when the conditions of the law have been complied with, which is denied to any other person. This act merely imposes a condition which must be complied with before any one may lawfully sell liquor, and contains no restriction as to whom license may be granted, when these conditions have been met. As has been said, the authorities were reviewed in the McClure case above, and it would be without profit to again review them here. In the recent case of *Hickey* v. *State,* 114 Ark. 526, in reviewing the opinion in the McClure case, it was said:

(1) "We held, in effect, that the statutory provision that a license to sell intoxicating liquors shall not be granted unless the applicant obtains the recommendation or consent of a majority of the adult white inhabitants of the city where he proposes to carry on business, is a lawful and proper police regulation, and is not objectionable on the ground that it violates either the State or Federal Constitution. We said that under the statute now under consideration the petition was a jurisdictional condition upon which the county court acts, when satisfied that it contains the names of the majority of the adult white inhabitants in the city in which the applicant seeks license to sell intoxicating liquors, and held that a statute imposing conditions on the business of retailing intoxicating liquors, though such conditions may be more onerous than those imposed upon another business, and though such conditions may be so burdensome as to render the business unprofitable and, on that account, amount, in its practical results, to prohibtion, may be sustained because the business of selling intoxicating liquors more seriously affects the health, morals and general welfare of the people than another business."

No arguments are now advanced which shake our faith in the correctness of that statement.

(2) When the terms and requirements of the Going Act have been met, there still abides with the judge of

the county court a discretion as to whether or not he shall adopt the policy of granting license to sell liquor, and this act merely imposes a condition which must be met before the judge may exercise that discretion.

(3) It is insisted that the Going law deprives the colored citizen of the right to remonstrate against the issuance of liquor license. But such is not the case. He may do so in any manner in which a white citizen may remonstrate. He has the right to be made a party to any proceeding under the Going law and to demand that its requirements shall be met before the county court shall adopt the policy of issuing liquor license, and if that court should ignore this law, or fail to find that its requirements had been complied with, the colored citizen thus made party to this proceeding, would have the same right to prosecute an appeal that any other citizen would have. And if it be found that the requirements of that act have been met, the colored citizen may be heard, and, of course, should be heard by the judge of the county court, as to the exercise of the courts discretion about granting license at all; and if so, then further upon the segregation of the traffic, or other questions relating to its control or regulation.

(4-5) It is further argued that no race suffers more from the baneful effect of the liquor traffic than the colored race, yet they are allowed no voice in its suppression, and that there are communities in this State in which the colored population very largely predominates, and that a minority of white persons have the exclusive right of determining that liquor shall be sold in such communities, and that the colored citizens are powerless to protect themselves from this traffic. But such is not the case. Under the law of this State, liquor can not lawfully be sold in any county unless a majority of the electors voting on the subject of the issuance of license shall vote for the issuance of license; nor can liquor be sold in any township of any county, nor in any ward of any city, notwithstanding the vote of the county in which such township or ward may be situated, unless such township

or ward shall likewise vote for the issuance of license. If the vote on this question, which occurs at the general State election on the second Monday in September of the even numbered years, is favorable to the issuance of liquor license, then a condition under which the county court may exercise its discretion in regard to the issuance of such license is met, but this favorable vote for license is, itself, a condition precedent to the exercise of this discretion. Another statute permits all adult persons to petition the county court to prohibit the sale of intoxicating liquors within three miles of any given point in this State, and no distinction is made on account of the race of the petitioner, and the court must make its order prohibiting the sale of liquor within three miles of the designated point, if such petition contains a majority of the adults, without any reference whatever to the race of such petitioners. This election, and this proceeding by petition under what is commonly known as the three-mile Local Option Law, are both mere methods by which the State exercises its police power in regard to this traffic. The State has this right, because the authority to sell liquor is a mere privilege, which the State may grant or withhold, as it pleases, or, if it grants this permission at all, it may do so under any conditions which it cares to impose; and this is true, as has been stated, even though these conditions are so onerous as to amount to virtual prohibition of that traffic. The necessity of securing the petition of a majority of the adult whites of any given community is one of these conditions, and is valid as such. The Legislature, if it saw proper, could require that petitions be obtained securing the signatures of the majority of the adults of the colored race, and such requirement would be a valid exercise of the State's police power, even though none except members of the colored race were permitted to sign this petition.

Both the decree and the judgment are affirmed.