BENNETT *v.* MOORE.

4-6570                                    157 S. W. 2d 515

Opinion delivered January 12, 1942.

512

*Ben C. Henley,* for appellant.

*Woody Murray,* for appellee.

GRIFFIN SMITH, C. J. The appeal questions action of the Fourteenth district circuit court in sustaining the county court's judgment directing that an election be held in Boone county under authority of Art. 7 of Act 108, approved March 16, 1935, Pope's Digest, § 14147.

Ninety-one petitions were filed, eighty-nine of which, as the judgment recites, contained the names of 1,688 qualified electors, and were deposited with the clerk July 1, 1941. July 2 a petition containing the names of 14 qualified voters was filed, and on July 7 a final petition,

·containing 21 names, was added. All petitions except the last were filed prior to the July term of court, which convened Monday, the seventh.

The county court judgment of July 17 found that the 91 petitions contained the signatures of approximately 2,450 persons who represented themselves to be qualified electors; that the proposal was whether spirituous, vinous, and malt liquors should be sold;[1] that 89 petitions "containing the names of 1,688 qualified signers" were filed July 1;[2] that on July 2 and 7 the two petitions heretofore referred to, containing 14 and 21 names, respectively, were received, and all such petitions should be considered as having been filed in apt time.

Exceptions of J. V. Bennett and others[3] were overruled. It was contended (1) that the petitions were not filed within the time and in manner prescribed by law, and were therefore void. (2) Invalidity was also alleged ". . . for the reason that [the petitions] seek the calling of an election on the question of whether or not heavy native wines manufactured, distributed, and sold by residents of Arkansas may be sold at retail in Boone county." (3) Neither of the petitions, it was averred, contained the signatures of 35 per cent of the county's qualified electors, nor (4) were they addressed to anyone. (5) Finally, it was charged that those who signed the petitions were induced to do so through representations of solicitors that the election was to be called "to make Boone county dry."

Following an exhaustive hearing, the circuit court (July 31) adjudged the petitions were filed as required by

[1] The ballot contained, in one paragraph, "For the sale, barter and loan at wholesale and retail of spirituous, vinous and malt liquors by dispensaries, hotels, restaurants, clubs, and other dealers in Boone county, Arkansas." In another paragraph the same matter appeared, preceded by the words, "Against the sale  . . ."

[2] These [89] petitions constituted more than 35% of the qualified voters of the county, according to the county court's finding.

[3] J. V. Bennett, L. E. Mogel, and Frank Coffman, representing themselves to be citizens, residents, and taxpayers of Boone county, were holders of retail liquor dealers' licenses; also, they were engaged in the sale of native wines, "manufactured, distributed, and sold by residents of Arkansas."

law; that they should be considered as a unit, including the one filed July 7 containing 21 names, but irrespective of names on the last petition more than 35 per cent of the qualified voters were represented, and the election should not be enjoined.

The exceptors, in their motion for a new trial, alleged twenty-one errors. Each, as the record reflects, was carefully considered by the court, and in some instances testimony was taken on the points involved at the time the motion was argued. In their brief appellants argue nine assignments, not all of which were called to the court's attention when it was asked to grant a new trial. These, of course, cannot be reviewed here.

The first, second, and third assignments are formal. The fourth seeks to predicate error upon action "in determining the jurisdictional sufficiency of the petitions." The court held that the petitions were properly signed by persons "who paid their poll tax last year within the time specified," provided those who signed were in other respects qualified; also, that such persons must have been qualified voters at the time they signed the petitions, at the time the petitions were filed, and on the date of hearing.

Appellants' contention is that the correct test is, Would the petitioner be eligible to vote in the election it is proposed to call? In this respect appellants are in error. The election is one thing, the machinery by which it is called is another.

Section 1, art. 7, Act 108, authorizes an election to be called when 35 per cent of the county's legal voters have made application by written petition. Whether traffic in intoxicants is to be prohibited is not determined by the petitions, but by those who vote when the election is held. If illegal votes are cast, that vice may be reached through contest; but those who petitioned for the election complete their functions when the county court, on original consideration, determines the controverted questions; and when, on appeal, the circuit court examines these issues anew, there is not the additional right to speculate whether an elector will maintain this status. Action of

the circuit court relates back to the date jurisdiction was assumed by the county court.

If appellants' challenge to "jurisdictional sufficiency of the petitions" goes to the number of voters who signed and to the manner in which the signatures were procured; also, if it raises the question of verification, and the time and method of filing, separate consideration of these issues is required.

It was error to consider the petition filed July 7. Although appellees argue the court had not convened when the 21 names were added to those previously filed, the seventh was the first day of the July term. No part of it could be regarded as a remnant of the April term. Section 1 of art. 7, act 108, is mandatory in its requirement that after petitions have been filed, action upon them must not be taken until the succeeding term of court. *Phillips* v. *Mathews, County Judge.*[4] This, however, did not affect validity of the judgment if sufficient names were filed during the April term. The circuit court found that, exclusive of the belated petition, others containing in the aggregate more than 35 per cent. of the legal voters had been presented; and, while we do not review the county court's action except as presented through appeal from the circuit court, it is noteworthy that Jeffrey Dixon, county judge, was used as a witness and testified regarding the petitions. He had personally examined them and was acquainted with many of those whose names were challenged, "and [had] checked signatures with the official poll tax list for 1940." The method used was to compare signatures on each petition with names appearing in the official poll tax list. If the two corresponded, "o. k." would be penciled opposite or in front of the name on the petition, and: "When I got through I counted the 'o. k.'s' and noted the number of qualified electors on the back of the particular petition. I did not note the number of those not qualified."

The ninety petitions were properly treated as the "written application" of all who signed, and who were qualified electors when the county court directed that

---

[4] *Ante,* p. 100, 155 S. W. 2d 716.

the names be checked for accuracy, a procedure in which the judge took part. It would create an intolerable situation if we should hold that all who joined in requesting the election were required to sign the same paper. There is nothing in Act 108 indicating this was the legislative intent.

W. J. Moore testified that with others on the committee he checked the lists. An attorney for appellants objected on the ground that ". . . that wasn't the official list; and, secondly, [the work of checking] was done by a committee." According to this witness, the petitions contained "about" 2,400 names, and 1,657, were found to be qualified voters. Moore then added, "We did not count those that were doubtful."

Roy Milum, Jr.,[5] testified that the petitions contained 2,180 signatures, and that 502 did not appear "on the poll tax list exhibited here." This left 1,678 classified as eligible to vote. Many names were challenged. The number is indicated by the trial court's comment that ". . . you have challenged 150 or so."

Testimony given by Milum was that "There are about 3,700 names on the poll tax list. . . . There are 3,470 names *on this official list.*"[6]

In the motion for a new trial it was alleged that the court erred in overruling challenges to certain names, and to groups of names contained on two of the petitions identified as exhibits "X" and "Z." One petition contained twelve names, the other 35.

Examples of challenges are: B. F. Ruble was identified as Ben Ruble; Wilna Hathcoat as Wilna E. Hathcoat; Mrs. James L. Powers as Mrs. J. L. Powers; L. R. Fullerton as Louis Fullerton, etc.

Thirty-five per cent of the total of 3,740 names on the official poll list would. be 1,309. If all of those individually challenged, and those listed on the two exhibits,

[5] Mr. Milum is county court clerk.

[6] Italics supplied. [Although appellants' brief (p. 26) quotes Milum as saying the list contained 3,470 names, this is obviously a typographical error. It should be 3,740].

should be deducted from the 1,657 testified to by Moore [7] as electors, the remainder would be substantially more than 35 per cent of 3,740, and appellants could not profit by having the names stricken.

It is urged that W. J. Moore was not a competent witness. Evidence to sustain this exception, brought forward in the motion for a new trial, is that Moore and others checked the petitions ". . . to determine how many had signed, . . . and how many of those who had signed were qualified voters." [8]

There was no proof that the list was not official. Conversely, there was competent testimony that it was. Examination of the petitions and comparison of names with poll tax lists followed the pattern employed by plaintiff in *Hargis* v. *Hall, Secretary of State,* 196 Ark. 878, 120 S. W. 2d 335. In the case at bar the court did not err in its ruling on the point.

The eighteenth assignment is that the court erred in counting as qualified electors all petitioners whose names appeared on lists filed by W. R. Kindall, Clifford Phillips, and Jess F. Watkins, ". . . because such signatures were procured by representations on the part of the circulators which amount to a fraud in law." This relates to the allegation that as an inducement to procurement of signatures electors were told that it was the purpose "to make Boone county dry." Five witnesses were called. None testified that, in the absence of representations complained of, the petition would not have been signed.

---

[7] Lowest estimate made by any of the witnesses.

[8] Q. "Is [the attorney for appellees] asking this witness for his computation?" The Court: "He asked [if he] checked the list." Attorney for appellants: "I don't think Mr. Moore is competent." The Court: "Let him tell if he knows." Attorney for appellants: "Save our exceptions." The question was then asked by appellees' attorney: "Did you check with the printed list furnished by the Boone county election commissioners?" There was an affirmative answer. Appellants' attorney then said: "We object. In the first place, that wasn't the official list, and in the second place [the work] was done by a committee." The poll tax list referred to was then identified as "the list that was used," and the objection was overruled.

The proof was not of a character to destroy integrity of the petitions.

In the motion for a new trial the nineteenth assignment is that the court "erred in its findings and judgment, both severally and generally, over the objections of the respondents, proper exceptions being at the time saved and noted of record, as follows." The judgment was then copied, in which the ballot form appeared, permitting a vote "Against the sale, barter and loan at wholesale and retail of spirituous, vinous and malt liquors," etc.[9] It is now contended that the word "wholesale" printed on the ballot is in conflict with § 7 of art. 7, Act 108. The form is an exact copy of the ballot used in White county in 1938. *Johnston* v. *Bramlett,* 193 Ark. 71, 97 S. W. 2d 631. There the right of a wholesaler to operate, after the ban provided in Act 108 had been invoked, was not raised; nor do we think it is presented here.

The trial court's attention was not specifically called to inclusion of "wholesale," which, at most, would only be surplusage if Act 108 does not extend the privilege of local option to "any manufacturer or wholesale dealer who, in good faith, and in the usual course of trade, sells, by the wholesale, in quantities of not less than five gallons, delivered at one time, not to be drunk on the premises." Although we do not construe the provision because the circuit court was not asked to do so, it is not inappropriate to direct attention to § 8 of art. 7, which makes it unlawful to sell "by wholesale any spirituous, vinous, malt or other intoxicating liquor, regardless of the name by which it is called (except manufacturers selling liquor of their own make at the place of manufacture to a wholesale dealer or a licensed retail dealer) in any county . . . where the sale of such liquor has been prohibited by vote of the people under the local option law."

Definitions in Act 108 clearly show the legislative purpose. The words "heavy native wines manufactured, distributed, and sold by residents of Arkansas" do not appear in the petitions or ballot; hence, it does not follow,

---

[9] See first footnote.

as appellants argue, that the election was called for the determination of that question, and that voters were misled. .

It is argued that art. 7 of Act 108 is unconstitutional in that it deprives appellants of their property without due process.

Authority to sell intoxicating liquors is a privilege as distinguished from a right. *Havis* v. *Philpot,* 115 Ark. 250, 170 S. W. 1005, Ann. Cas. 1916E, 167.[10] Want of notice in the case at bar is unimportant because appellants appeared and filed their exceptions. In the Johnson-Bramlett case a statement is: "There is no conflict [between Act 108 of 1935] and the constitution. This is not an election provided for by the constitution, and [Amendment No. 7] has no application."

The objection that petitions were not directed to anyone is untenable. They are captioned: "In the county court of Boone county, in the matter of the sale of spirituous, vinous, and malt liquors in Boone county, Arkansas." They were, therefore, properly addressed to the court.

It is our opinion that the trial court very carefully and thoroughly considered all material objections offered, and that it did not err in declining to enjoin the election.

Affirmed.

HOLT, J., disqualified and not participating.

---

[10] Cf. *Thompson* v. *Wiseman,* 189 Ark. 852, 75 S. W. 2d 393.