Mr. Donnie Kissinger 1844 East Highland Drive Jonesboro, Arkansas 72401
Dear Mr. Kissinger:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 2000), of the popular name and ballot title for a proposed constitutional amendment. You have previously submitted a similar measure, which I rejected because you failed to provide the text of your proposed amendment. See Op. Att'y Gen. 2008-092. You have made changes to your proposal and resubmitted the popular name and a revised ballot title for my certification. Your proposed popular name and ballot title state:
 Popular Name A CONSTITUTIONAL AMENDMENT TO REPEAL ACT 1813 OF 2003 AND TO STATE THE PURPOSE OF A "DRY COUNTY" AND TO ESTABLISH THE CRITERIA OF "PRIVATE CLUBS" IN DRY COUNTIES Ballot Title AN AMENDMENT TO REPEAL ACT 1813 OF 2003 BECAUSE OF THE FACT IT ESTABLISHES "PRIVATE CLUBS" AS ENTERTAINMENT ESTABLISHMENTS TO SERVE ALCOHOL IN "DRY COUNTIES." THESE COUNTIES HAVE BEEN VOTED DRY AND YET STILL HAVING "PRIVATE CLUBS" BEING PUT IN "DRY COUNTIES." THEREFORE THIS SHALL *Page 2 
RESTRICT THE ALCOHOLIC BEVERAGE CONTROL BOARD FROM GRANTING ANY MORE "PRIVATE CLUB" LICENSES TO INDIVIDUALS OR BUSINESSES IN "DRY COUNTIES."
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition. Neithercertification nor rejection of a popular name and ballot title reflectsmy view of the merits of the proposal. This Office has been given noauthority to consider the merits of any measure.
In this regard, A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. In addition, following Arkansas Supreme Court precedent, this office will not address the constitutionality of proposed measures in the context of a ballot title review unless the measure is "clearly contrary to law." Kurrus v. Priest, 342 Ark. 434,29 S.W.3d, 669 (2000); Donovan v. Priest, 326 Ark. 353, 931 S.W.2d 119
(1996); and Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that thepopular name and ballot title honestly, intelligibly, and fairly setforth the purpose of the proposed amendment or act. See Arkansas Women'sPolitical Caucus v. Riviere, 283 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, *Page 3 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency.Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277,285, 884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418,798 S.W.2d 34 (1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988);Hoban v. Hall, supra; and Walton v. McDonald, 192 Ark. 1155,97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen,supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian CivicAction Committee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed popular name and ballot title due to ambiguities in the text of your proposed measure. A number of additions or changes to your popular name and ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct popular name and ballot title pursuant to A.C.A. § 7-9-107(b). *Page 4 
I refer to the following ambiguities:
 1. You have now supplied a text of your proposed constitutional amendment, after my response to your last submission, in which you failed to include any text. See Op. Att'y Gen. 2008-092. The text of your proposed constitutional amendment is as follows:
 An amendment to the Arkansas Constitution that repeals ACT 1813 of 2003 and states "a dry county is a county where "It shall be unlawful for any person, firm, or corporation to manufacture, sell, barter, loan, or give away intoxicating liquor in any county, township, municipality, ward, or precinct in which the manufacture or sale of intoxicating liquor is or shall be prohibited under the provisions of Initiated Act No. 1 of 1942" and that the people of these "dry counties" have voted to keep it this way to keep "private clubs" from coming into "dry counties" and shall not be amended without a vote of said "dry counties" to change the status of said county. This shall stop the Alcoholic Beverage Control board from issuing of "private club" licenses to individuals or companies or corporations until said counties become wet counties". Any "private club" that was in existence before the ACT 1813 of 2003 will be exempted from this amendment and allowed to keep operating.
 An initial ambiguity arises because the first sentence of this text is descriptive rather than active. As I stated to you in Op. Att'y Gen. 2008-092, the "text of a proposed constitutional amendment, if adopted, becomes a part of the Arkansas Constitution. . . ." I noted in that Opinion the difficulties presented when descriptive, rather than active language is used in the text of an initiated measure. I am not your counsel and cannot offer you legal advice. I can state, however, that the text of a constitutional amendment must actively bring about the desired changes in the law, rather than simply describing them. *Page 5 
 Otherwise, the ensuing ambiguities will prevent me from being able to certify a popular name and ballot title. In this regard, the first sentence of your text states that "An amendment to the Arkansas Constitution that repeals ACT 1813 of 2003 and states "a dry county is a county where "It shall be unlawful for any person . . . [etc.]." As an initial matter, although this language describes the repeal of Act 1813 of 2003, the language does not actively repeal Act 1813 of 2003. This fact renders the effect of your measure unclear and makes it impossible for me to summarize the effect of your measure in a ballot title. In addition, the use of quotation marks in some portions of your text creates confusion as to what language is intended for insertion into the Arkansas Constitution. The first sentence of your text describes an Amendment that "repeals Act 1813 of 2003 and states `a dry county is a county where . . . etc." (Emphasis added). It is unclear whether you intend only the language after the quotation mark ("a dry county is a county . . .") to be incorporated into the Arkansas Constitution, or whether you intend all the language submitted as your "text" for such inclusion. As I noted in Op. Att'y Gen. 2008-092, the paragraph or paragraphs you designate as your "text" will, if adopted, be incorporated into the Arkansas Constitution.
 2. Several ambiguities arise from your measure's definition of "dry county." First, grammatical problems make this language difficult to interpret or to summarize clearly in a ballot title. At least part of this definition ("It shall be unlawful for any person . . ."), appears to have been borrowed from existing A.C.A. § 3-8-209(a) (Supp. 2007). The insertion of this language into your definition of "dry county," however, makes the sentence incapable of clear construction. It also creates confusion because the language you have borrowed refers to governmental subdivisions other than counties in the definition of a "dry county." Essentially, your measure's definition of "dry county" is a "county where . . . [i]t shall be unlawful . . . for any person . . . to . . . sell . . . intoxicating liquor . . . in any county, township, municipality, ward, or precinct . . . in which the . . . sale of *Page 6 
intoxicating liquor is . . . prohibited. . . ." I cannot certify a clear, concise ballot title summarizing this definition. Second, your reference to Initiated Act No. 1 of 1942 creates an ambiguity. Your measure defines a "dry county" by referring to counties in which the sale or other listed transfer of intoxicating liquor has been "prohibited under the provisions of Initiated Act No. 1 of 1942." As explained in Op. Att'y Gen. 2007-310, an earlier law, the "Thorn Liquor Law" (Act 108 of 1935), also authorized local option elections to allow citizens to vote to become "dry." It appears to be your intention to define a "dry county" as including all counties that have voted to become "dry." It is unclear in this regard whether your measure also includes, in the definition of "dry county," counties that voted to become "dry" under the earlier provisions of Act 108 of 1935.[1]
 3. The balance of the first sentence of your measure states that "the people of these `dry counties' have voted to keep it this way to keep `private clubs' from coming into `dry counties' and shall not be amended without a vote of said `dry counties' to change the status of said county." I cannot determine what the language "shall not be amended" modifies in this sentence. That clause does not clearly refer to, or modify any preceding word. I thus cannot certify a ballot title summarizing this portion of your amendment.
 4. The next to last sentence of your measure states: "This shall stop the Alcoholic Beverage Control board from issuing of `private club' licenses to individuals or companies or corporations until said counties become wet counties." Again, several unclear, or potentially misleading issues arise from this *Page 7 
language. First, the repeal of Act 1813 will not alone stop the ABC Board from issuing private club licenses. The language of your measure appears to assume that Act 1813 of 2003 is the sole authority for the issuance of private club licenses. That is not the case. Act 1813 of 2003
merely amended the existing statutes that authorized the creation of private clubs in "dry" areas. Specifically, it amended the existing definition of "private club" in A.C.A. § 3-9-202(10)(A)(i) to add "community hospitality, professional association, [and] entertainment" to the existing list of purposes for which private clubs can be organized. It also added some introductory language to the existing provisions of A.C.A. § 3-9-221, referring to "restaurants" and "entertainment facilities" that "promote the hospitality of the host communities. . . ." As the second sentence of your proposed language acknowledges, private club licenses were issued by the Alcoholic Beverage Control Board before the passage of Act 1813 of 2003. Such licenses may also be issued in the future for the statutory purposes that pre-dated Act 1813. The repeal of Act 1813 of 2003 will thus not affect the preexisting law that authorized the issuance of private club licenses and will not, as your measure asserts, "stop the Alcoholic Beverage Control board from issuing of `private club' licenses to individuals or companies or corporations until said counties become wet counties." Second, as noted above, your definition of "dry county" may not stop the ABC Board from issuing such licenses in all counties. Again, your measure refers only to counties that voted "dry" under Initiated Act 1 of 1942 and, as noted above, that is not the only authority under which Arkansas counties could have voted "dry." I therefore cannot summarize this language of your text in a clear, concise, non-misleading ballot title.
 5. Ambiguities also arise from the last sentence of your measure ("Any `private club' that was in existence before the ACT 1813 of 2003 will be exempted from this amendment and allowed to keep operating.") An initial ambiguity exists as to the time at which this "existence" will be measured, at the time of passage *Page 8 
of Act 1813 (May 6, 2003), or at the time of its effective date (July 6, 2003). See Op. Att'y Gen. 2003-119. An additional ambiguity arises as to whether this language outlaws any private club created after Act 1813 of 2003, or whether it outlaws only private clubs created under the expanded purposes that Act 1813 authorized. That is, I cannot determine whether it is your intention to invalidate or prohibit all private clubs licensed after Act 1813, or only those private clubs that were substantively within the expanded purposes added to the statute by Act 1813. Finally, this last sentence of your measure states that private clubs in existence before Act 1813 "will be . . . allowed to keep operating." An ambiguity arises as to whether this language grants individual private clubs a constitutional sanction to continue operating, in perpetuity, despite any future action of the General Assembly or state regulatory authorities. If so, that important fact must be summarized for the voters in a ballot title for your measure.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest,341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself."Id. Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my *Page 9 
statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed popular name and ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure, popular name and ballot title. See A.C.A. § 7-9-107(c). You may, after clarification of the matter discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted popular name and ballot title may be necessary. I will perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
DUSTIN McDANIEL, Attorney General
[1] I am unaware, as a factual matter, whether any counties are currently "dry" as a result of a local option election held underAct 108 of 1935. Case law of the Arkansas Supreme Court indicates that possibility, however. See, e.g., Bennett v. Moore, 203 Ark. 511,157 S.W.2d 515 (1942) (addressing an election in Boone County and mentioning one in White County); Phillips v. Matthews, 203 Ark. 100, 155 S.W.2d 716
(1941) (addressing a Grant County election); McKeown v. State,197 Ark. 454, 124 S.W.2d 19 (1939) (mentioning a Hot Springs County election); and Johnston v. Bramlett, 193 Ark. 71,97 S.W.2d 631 (1936) (addressing a White County election). *Page 1